### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### ORANGEBURG DIVISION

| | |
|---|---|
| ROBERT E. LYON, JR., Individually and as Personal Representative of the Estate of MARY LYON WOLFE,<br><br>Plaintiff,<br><br>vs.<br><br>TAKATA CORPORATION, TAKATA, INC., TK HOLDINGS, INC., HIGHLAND INDUSTRIES, INC., HONDA MOTOR CO., LTD., HONDA R & D CO., LTD., AMERICAN HONDA MOTOR CO., INC., AND HONDA OF AMERICA MFG., INC.,<br><br>Defendants. | Civil Action No. `5:14-4485-JMC`<br><br>**WRONGFUL DEATH/ SURVIVAL PRODUCTS LIABILITY ACTION**<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DAMAGES

COMES NOW PLAINTIFF, Robert E. Lyon, Jr., as Personal Representative of the Estate of Mary Lyon Wolfe, by and through the undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, and files this Complaint for Damages against the Defendants, named above, showing the Court as follows:

### NATURE OF THE ACTION

1.      This is a civil action arising from the death of Plaintiff's Decedent, Mary Lyon Wolfe ("Mrs. Wolfe"), age 57, on February 15, 2008 in Orangeburg, South Carolina.

2.      The Plaintiff in Robert E. Lyon, Jr. (the "Plaintiff"), in his representative capacity, brings a survival action for damages sustained by Mrs. Wolfe prior to her death, including but not limited to pain, suffering, mental anguish, and anticipation of death, and for wrongful death damages

1

suffered as result of Mrs. Wolfe's death, as well as punitive damages. This products liability action also includes claims for general negligence, gross negligence, reckless conduct and breach of warranty.

3.      The claims asserted herein arise out of the design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, and sale of an uncrashworthy, defective, and unreasonably dangerous automobile and automobile airbag system.

## THE INCIDENT

4.      On February 15, 2008, Mrs. Wolfe, was operating her Silver, 4-Door 2002 Honda Accord, VIN #1HGCG66882A115601 (the "Vehicle").

5.      While traveling eastbound on Griffith Drive in Orangeburg, South Carolina, the Vehicle was involved in a single car collision (the "Incident").

6.      During the Incident, while rounding a curve, the Vehicle veered off the right side of the roadway and made contact with a culvert, a mail box and a tree before coming to rest in the yard of the home located at 2091 Griffith Drive, Orangeburg, South Carolina.

7.      The Incident was a foreseeable collision event arising out of ordinary use of the Vehicle.

8.      At the time of the Incident the Vehicle and the component sub-assemblies was in the same essential condition as it was at the time it left Defendants' control.

9.      At the time of the Incident Mrs. Wolfe was the sole occupant of the Vehicle.

10.      During the Incident the Vehicle's frontal airbags deployed with excessive force, striking Mrs. Wolfe and causing serious injuries including but not limited to a spinal fracture.

11.      Despite sustaining these serious injuries, Mrs. Wolfe initially survived the Incident and experienced tremendous physical pain and suffering.

12.      Officials from the Orangeburg Department of Public Safety, the Orangeburg Emergency

Medical Services and the South Carolina Highway Department quickly responded to the scene of the Incident.

13.     Responding Orangeburg Emergency Medical Services officials attempted to assist Mrs. Wolfe but due to the severity of her injuries she was transported by helicopter to Palmetto Richland Memorial Hospital in Columbia, South Carolina.

14.     Mrs. Wolfe remained at Palmetto Richland Memorial Hospital until she passed away on March 3, 2008, eighteen days later, due to the injuries she sustained from the delayed deployment and/or excessive and unnecessary forces from the airbag system in her Vehicle on February 15, 2008.

15.     The Coroner's Report lists her causes of death as respiratory failure, liver contusion, anoxic brain injury and c-spine fracture - all injuries arising from the February 2008 Incident and resulting, upon information and belief, from the Vehicle's delayed deployment and/or excessive and unnecessary forces from the airbag system.

16.     After Mrs. Wolfe's death the subject Vehicle was recalled as a result of defects in the Vehicle's driver's frontal airbag system.

17.     Upon information and belief, the excessively energetic inflator and excessive forces described in that recall significantly affected the subject Vehicle on the day of the Incident, likely played a role in the subject Vehicle's excessive forces of the airbag system and consequentially caused and/or significantly contributed to the serious injuries Mrs. Wolfe sustained on February 15, 2008 which ultimately led to her untimely death on March 3, 2008.

## THE PARTIES, JURISDICTION, AND VENUE

18.     At all times relevant herein, Plaintiff Robert E. Lyon, Jr. is and was a citizen and resident of the County of Lexington, State of South Carolina and the surviving brother of Mrs. Wolfe.

19.    Robert E. Lyon, Jr. has been appointed and is bringing this action individually and as the duly appointed Personal Representative of the Estate of Mary Lyon Wolfe (the "Estate").

20.    Defendant Takata Corporation ("Takata") is a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business at ARK Hills South Tower 4-5 Roppongi 1-Chome, Minato-ku, Tokyo, 106-8488, Japan.  Takata is a specialized supplier of automotive safety systems, that designs, manufactures, assembles, tests, markets, distributes, and sells vehicle restraint systems to various Original Equipment Manufacturers ("OEM's"), including Honda, in the United States and abroad, including specifically the airbag incorporated and used by Honda in its airbag safety system in the subject Vehicle. Takata is a vertically-integrated company and manufactures component parts in its own facilities, and, then, distributes same.  Defendant Takata does not have a Certificate of Authority to Transact Business in South Carolina but  may be served by and through the Chairman of the Board, Chief Executive Officer, and President of Takata under Article 10(a) of the Hague Service Convention, to which Japan is a signatory, and as is consistent with South Carolina law. In addition, Takata may be served through Japan's central authority pursuant to Article 5 of the Hague Convention.  At all times relevant herein, Takata conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

21.    Defendant Takata, Inc. ("Takata, Inc.") is a Delaware corporation and subsidiary and/or operational unit of Takata. Takata, Inc. is in the business of designing, manufacturing, assembling, testing, promoting, advertising, distributing and selling vehicle restraint systems to various

OEM's, including Honda, including specifically the airbag incorporated and used by Honda in its airbag safety system in the subject Vehicle. Takata is a vertically-integrated company and manufactures component parts in its own facilities in the United States, and, then, distributes same. Defendant Takata, Inc. has a Certificate of Authority to Transact Business in South Carolina and may be served by and through its registered agent for service of process at CT Corporation System, 75 Beattir Pl Two Shelter Center, Greenville, South Carolina 29601.  At all times relevant herein, Takata, Inc. conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

22.     Defendant TK Holdings Inc. ("TK Holdings") is a Delaware corporation and subsidiary and/or operational unit of Takata, headquartered in Auburn Hills, Michigan with its principal place of business at 2500 Takata Drive, Auburn Hills, Michigan 48326.  TK Holdings is in the business of designing, manufacturing, assembling, testing, promoting, advertising, distributing and selling vehicle restraint systems to various OEM's, including Honda, including the airbag incorporated and used by Honda in its airbag safety system in the subject Vehicle.  Additionally, TK Holdings has also been identified in various materials as manufacturing the "inflators" in the frontal airbag systems which are rupturing or exploding with unreasonably dangerous, excessive concussive force and which in many instances have injured vehicle occupants with shrapnel or concussive impacts, as well as the "propellant" or explosive charge used within the inflator itself. TK Holdings also is involved in the distribution of such airbag systems to OEM's, including Honda. Moreover, to the extent the United States Department of Transportation ("DOT") by and through the

5

Secretary of Transportation has delegated authority to the Chief Counsel of the National Highway Traffic Safety Administration (hereinafter "NHTSA") by a "Special Order" dated October 30, 2014, to investigate this safety issue, it is TK Holdings who has been ordered to provide responses to "demands [for] certain information and documents" provided and "signed under oath" no later than "**December 1, 2014**", as to its newly initiated "PE14-016 Air Bag Inflator Rupture" investigation.[1]  Defendant TK Holdings has a Certificate of Authority to Transact Business in South Carolina and may be served by and through its registered agent for service of process at Corporation Service Company, 1703 Laurel Street, Columbia, South Carolina 29201. At all times relevant herein, TK Holdings conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

23.     Defendant Highland Industries, Inc. ("Highland") is a Delaware corporation and subsidiary of Takata Corporation, headquartered in Greensboro, North Carolina with its principal place of business at 1350 Bridgeport Drive, Suite 1, Kernersville, North Carolina 27284. Highland is in the business of designing, manufacturing, assembling, testing, promoting, advertising, distributing and selling industrial and automotive textile product solutions, including airbag fabrics, to various OEM's, including Honda, including the airbag fabrics incorporated and used by Honda in its airbag safety system in the subject Vehicle.  Highland is a vertically-integrated company and manufactures component parts in its own facilities in the United States, and, then, distributes same.  Defendant Highland has a Certificate of Authority to Transact Business in South

---

[1] *See*, NHSTA Special Order Directed to TK Holdings, Inc., dated October 30, 2014.

Carolina and may be served by and through its registered agent for service of process at C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times relevant herein, Highland conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

24.    Defendants Takata, Takata, Inc., TK Holdings, and Highland are hereinafter collectively referred to as "Takata" or "Takata Defendants."  Takata is the manufacturer of the airbag in Mrs. Wolfe's Vehicle, which was recalled subsequent to the Incident which forms the subject matter of this litigation.

25.    Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business at 2-1-1, Minami-Aoyama, Minato-ku, Tokyo 107-8556, Japan.  Honda Motor manufactures and sells motorcycles, automobiles, and power products through its related subsidiaries and/or operating units, including but not limited to Honda R & D Co., Ltd., American Honda Motor Co., Inc., and Honda of America, Mfg., Inc., independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia, including the subject Vehicle.  Honda Motor has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it designs, manufactures and distributes for sale to the consuming public, including the subject Vehicle.  Honda Motor has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last decade, and the actions

and/or inactions of same relating to this public safety hazard. Defendant Honda Motor does not have a Certificate of Authority to Transact Business in South Carolina but may be served by and through the Chairman of the Board, Chief Executive Officer, and President of Takata under Article 10(a) of the Hague Service Convention, to which Japan is a signatory, and as is consistent with South Carolina law. In addition, Honda Motor may be served through Japan's central authority pursuant to Article 5 of the Hague Convention. At all times relevant herein, Honda Motor conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

26.    Defendant Honda R & D Co., Ltd. ("Honda R&D") is a foreign for-profit corporation organized and existing under the laws of Japan with its principal place at Wako Research Center, 1-4-1 Chuo, Wako 351-0-113, Japan. Honda R&D is a subsidiary of Honda Motor, works in conjunction with American Honda Motor Co., Inc. and Honda of America, Mfg., Inc., is responsible for the research, design and development of certain aspects of Honda brand vehicles, including testing and developing safety technologies for same, and was responsible for the design, development, manufacture, assembly, testing, distribution and sale of Honda brand vehicles utilizing Takata airbags primarily in Japan, North America, Europe, and Asia, including the subject Vehicle. Honda R&D has been involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it designs, manufactures and distributes for sale to the consuming public, including the subject Vehicle. Honda R&D has actively been involved in the

developing knowledge of this motor vehicle safety issue by Honda entities over the last decade, and the actions and/or inactions of same relating to this public safety hazard. Defendant Honda R&D does not have a Certificate of Authority to Transact Business in South Carolina but may be served by and through the Chairman of the Board, Chief Executive Officer, and President of Takata under Article 10(a) of the Hague Service Convention, to which Japan is a signatory, and as is consistent with South Carolina law. In addition, Honda R&D may be served through Japan's central authority pursuant to Article 5 of the Hague Convention. At all times relevant herein, Honda R&D conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

27.     Defendant American Honda Motor Co., Inc. ("American Honda") is a California corporation and a subsidiary of Honda Motor, headquartered in Torrance, California with its principal place of business at 1919 Torrance Blvd. Torrance, California 90501. American Honda designs, manufactures, assembles, tests, markets, promotes, advertises, distributes and sells Honda Motor and/or Honda brand cars, trucks, and sport utility vehicles in the United States, including the subject Vehicle. American Honda has been identified by HMC as the "Manufacturer's Agent" in its NHTSA communications related to this motor vehicle safety issue involving exploding, unreasonably dangerous Takata airbags in Honda brand vehicles and has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it makes, including the subject Vehicle. Additionally, American Honda is responsible for the distribution

of such Honda brand vehicles in the United States, Puerto Rico and the U.S. Virgin Islands. Moreover, American Honda has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last decade, and the actions and/or inactions of same relating to this public safety hazard. Finally, to the extent the United States Department of Transportation ("DOT") by and through the Secretary of Transportation has delegated authority to the Chief Counsel of the National Highway Traffic Safety Administration (hereinafter "NHTSA") by a "Special Order" dated November 5, 2014, to investigate this safety issue, it is AHM who has been ordered to provide responses to "demands [for] certain information and documents" provided and "signed under oath" no later than "**December 15, 2014**", as to its newly initiated "PE14-016 Air Bag Inflator Rupture" investigation.[2]   Defendant American Honda has a Certificate of Authority to Transact Business in South Carolina and may be served by and through its registered agent for service of process at CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.   At all times relevant herein, American Honda conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

28.    Defendant Honda of America, Mfg., Inc. (Honda Mfg.) is an Ohio corporation and subsidiary of a subsidiary of Honda Motor, headquartered in Marysville, Ohio with its principal place of business at 24000 Honda Pkwy, Marysville, Ohio 43040.   Honda Mfg. designs,

---

[2] *See,* NHSTA Special Order Directed to American Honda Motor Co., Inc., dated November 5, 2014.

manufactures, assembles, tests, markets, promotes, advertises, distributes and sells Honda Motor and/or Honda brand cars, trucks, and sport utility vehicles in the United States, including the subject Vehicle. Honda Mfg. has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it makes, including the subject Vehicle. Moreover, Honda Mfg. has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last decade, and the actions and/or inactions of same relating to this public safety hazard. Defendant Honda Mfg. has a Certificate of Authority to Transact Business in South Carolina and may be served by and through its registered agent for service of process at CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times relevant herein, Honda Mfg. conducted substantial business in South Carolina, regularly caused its products to be sold in South Carolina, and the cause of action arises out of a tort committed in South Carolina and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802, South Carolina Code § 36-2-803 and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

29.    Defendants Honda Motor, Honda R&D, American Honda, and Honda Mfg. are collectively referred to as "Honda" or "Honda Defendants." Honda vehicles sold in the United States contain airbags manufactured by the Takata Defendants. NHTSA has recalled to-date the following Honda vehicles for having faulty Takata airbags, including the Vehicle involved in the Incident which forms the subject matter of this litigation. Upon information and belief, the Honda Defendants are all directly responsible for the wrongful death of Mrs. Wolfe, which was caused by the defective inflator incorporated into the airbag safety system in the subject Vehicle that exploded, on February 15, 2008, and struck Mrs. Wolfe with such excessive force so as to inflict

upon her the fatal injuries which ultimately resulted in her untimely death.

30.     This Honorable Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity of citizenship exists between the parties.

31.     Venue of this action properly lies in the District of South Carolina pursuant to 28 U.S.C. § 1391(a) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## NATURE OF CLAIM

32.     An automotive component supplier that manufactures and sells airbags in automobiles and vehicle manufacturers must take all necessary steps to ensure that its products—which can literally mean the difference between life and death in an accident—function as designed, specified, promised, and intended.  Profits *must* take a back seat to safety for the airbag manufacturer and the automobile manufacturer in making its product sourcing decisions. Yet Takata and Honda put profits ahead of safety. Takata cut corners to build cheaper airbags, and Honda bought its airbags from Takata to save money. The result is that instead of saving lives, faulty Takata airbags in Honda automobiles are killing and maiming drivers and passengers involved in otherwise minor and survivable accidents. Even more alarming, rather than take the issue head-on and immediately do everything in their power to prevent further injury and loss of life, Takata and Honda have engaged in a ten-year pattern of deception and obfuscation, only very recently beginning a partial recall of affected vehicles.

33.     Airbags are a critical component in the safety features of virtually every motor vehicle sold in the United States and throughout the world. Currently, over 30,000 people are killed in motor vehicle accidents each year in the United States.  Remarkably, that number is nearly half of what

it was in 1966, when over 50,000 Americans died in car crashes. The drastic reduction is, in large, part due to tremendous advances in vehicle occupant safety, including the widespread use of seatbelts and airbags.

34.     In order to prevent serious injury and death resulting from bodily impact with the hard interior surfaces of automobiles, like windshields, steering columns, dashboards, and pillars, upon a vehicle experiencing a specified change in velocity in a collision, accelerometers and sensors in the vehicle frame trigger the vehicle airbags to deploy. Because collisions can occur at rates of speed that can cause serious injury, to be effective, airbags must deploy timely and at appropriate velocity to be effective, but not subject the occupant to additional unnecessary harm. To accomplish this, the airbag system is through highly conductive metals, such as gold, and the airbag systems use small explosive charges to immediately inflate the airbags upon being triggered. This case flows directly from the now admitted fact that Takata's explosive charge components in its airbag systems were defectively manufactured since as early as 2001, and perhaps earlier.

35.     Rather than deploying the airbags to prevent injuries, the defective Takata airbag inflators quite literally blew up like hand-grenades, sending lethal metal and plastic shrapnel into the vehicle cockpit and into the bodies of the drivers and passengers. In fact, in one otherwise non-catastrophic collision, responding police opened a homicide investigation because it appeared that the deceased driver had been stabled multiple times in the head and neck immediately before crashing her car. In truth and fact, the defective Takata airbag in the Honda vehicle had exploded and killed the driver by sending metal and plastic fragments into her body.

36.     Takata and Honda knew of the deadly airbag defect at least 13 years ago, but did nothing to prevent ongoing injury and loss of life. Takata's first airbag defect recall stemmed from defective manufacturing in 2000, but was limited (by Takata) to a recall of select Isuzu vehicles.

In Alabama, in 2004, a Takata airbag in a Honda Accord exploded, shooting out metal fragments which gravely injured the driver. Honda and Takata unilaterally deemed it "an anomaly" and did not issue a recall, adequately investigate themselves, or seek the involvement of federal safety regulators. Instead, they brushed it under the rug: Takata kept making defective airbags; and Honda kept putting them in its vehicles while marketing them as highly safe and of high quality.

37.    Airbags are meant to inflate timely, during an automobile collision but with only such force necessary to cushion the occupant from impact to the vehicle's interior and not cause additional enhanced injury. When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe. The Defective Vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode using excessive force, and in many incidents, expel lethal amounts of metal debris and shrapnel at vehicle occupants.

38.    Mrs. Wolfe's Vehicle contained airbags manufactured by manufactured by Takata Defendants that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode using excessive force, and caused her injuries ultimately resulting in her death.

39.    Despite Takata and Honda's prior knowledge of the propensity of the defective airbags to explode violently, injuring and killing occupants, Mrs. Wolfe's vehicle (VIN1HGCG66882A115601) was not recalled until April 27, 2011. Recall 11V260, including 833,277 was the fourth expansion of the original 2008 Honda recall.[3]

40.    Prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, selling, the Vehicle, Defendants Takata, Takata, Inc., TK Holdings,

---

[3] Recall 11V260; Part 573 Notice of Defect and Noncompliance; Honda Motor Co.; April 27, 2011

Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. were all aware that there existed alternative driver's frontal airbag system designs, which were safer, more practical and were both technologically and economically feasible for inclusion in the Vehicle. Upon information and belief, these alternative designs would eliminate the defective and unsafe characteristics of the Vehicle without impairing its usefulness or making it too expensive.

41.     The defects in Takata's airbags dates back to at least April 2000, when, according to one recall notice, some Takata airbags produced between April 2000 and September 2002 contained manufacturing defects. Takata became aware of the defect at least as early as 2004 when it was informed of the first complaint relating to the exploding Takata airbags in Honda vehicles.

42.     In 2004, a Takata airbag in a Honda Accord exploded in Alabama, shooting out metal shrapnel and severely injuring the car's driver. Honda and Takata deemed the incident "an anomaly" and did nothing about it. Neither Honda nor Takata sought the involvement of federal safety regulators.

43.     Upon information and belief, however, that same year, Takata conducted a series of secret tests after those first reports of the Honda incident, but despite its discovery that improper welds could lead to airbag explosions, the company affirmatively took action to destroy all evidence of those tests and failed to report the negative results to the proper authorities.

44.     Honda, also, did not issue an appropriate recall that year. In fact, Honda did not tell regulators about this event until an inquiry into its 2009 recall, the first with respect to the Takata airbags. After additional Takata-manufactured airbags ruptured, Honda issued additional recalls in 2010, 2011, 2013 and 2014.

45.     The serious danger posed by the lethal Takata airbags was not disclosed to U.S. safety

regulators until 2008, despite red flags raised by the 2004 Honda exploding airbag incident. Indeed, Honda received three additional reports of airbag rupture incidents in 2007, but never issued recalls or told U.S. safety regulators that the incidents involved exploding airbags. Finally, in November 2008, Honda informed U.S. authorities that it had a problem with some of the Takata airbags installed in its vehicles. However, at that time Honda recalled only 4,000 Accords and Civics.

46.    In April 2009, six months after the limited 2008 recall, a Takata airbag in a Florida resident's Honda Civic exploded after a minor accident. The violent explosion sent a two-inch piece of shrapnel from the airbag flying into the driver's neck. Although the driver survived, when highway troopers found her, blood was gushing from a gash in her neck. The driver's car was not part of the 2008 Recall.

47.    In May 2009, a month after the above accident, an 18-year-old driver was killed while driving a 2001 Honda Accord when the Takata airbag in her car exploded after her car bumped into another car in a parking lot. The metal shrapnel that shot out of the exploding Takata airbag sliced open her carotid artery and she bled to death. Her car was not one of those recalled six months earlier by Honda.

48.    It wasn't until two months after this death that Honda expanded its 2008 recall to about 400,000 vehicles, summoning back additional 2001 and 2002 Acura, Civic, and Accord models.

49.    In recent incidents, first responders have been baffled by the fact that victims of apparently minor accidents suffered injuries more consistent with being shot or stabbed repeatedly, or unexplained cervical fractures.

50.    For example, around July 2014, a South Florida resident was involved in a crash while

driving her 2001 Honda Civic. While she survived the automobile accident, she was badly injured when a chunk of metal exploded from her car's Takata airbag into her forehead. She survived, but now suffers from headaches, nausea, and loss of vision.

51.    On September 29, 2014, a Florida resident died four days after her 2001 Honda Accord struck another car in Orlando and the Takata airbag exploded, sending shrapnel into her neck. The medical examiner stated that the shrapnel tore through the airbag, hitting the driver and causing "stab-type wounds" and cutting her trachea. Indeed, her death was initially investigated as a homicide by detectives. A week after she died, a letter arrived at her house in the mail from Honda urging her to get her car fixed because of faulty airbags that could explode.

52.    Despite this shocking record, both Takata and Honda have been slow to report the full extent of the danger to drivers and passengers and failed to issue appropriate recalls. Both Honda and Takata provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more confusion and delay. Indeed, the danger of exploding airbags and the number of vehicles affected was not disclosed for years after it became apparent there was a potentially lethal problem. Instead, Takata and Honda repeatedly failed to fully investigate the problem and issue proper recalls, allowing the problem to proliferate and cause numerous injuries and at least four deaths over the last 13 years.

53.    It was not until 2013, four years after Honda first reported the problem to U.S. regulators, that a more detailed recounting of Takata's safety failures was revealed. The full scope of the defects have yet to be determined. More information about Takata's defective airbags continues to be uncovered today.

54.    Takata's own airbag manufacturing plants did not abide by Takata's internal safety rules. In 2002, Takata's airbag manufacturing plant in Mexico allowed a defect rate that was "six

to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

55.    To date, over 14 million vehicles with Takata's airbags have been recalled worldwide, and there are reports that additional vehicles that have not yet been disclosed by the Defendants could join the list of recalls. The large majority of those recalls have come only within the last year despite the fact that many of the vehicles were manufactured with a potentially defective and dangerous airbag over a decade ago. According to NHTSA, as of October 22, 2014, over five (5) million Honda and Acura vehicles are potentially affected by Takata-manufactured airbags; 2.7 million BMW, Chrysler, Ford, GM, Mazda, Mitsubishi, Nissan, Subaru and Toyota vehicles are affected.[4]

56.    A recent article in *The New York Times* detailed the widespread (and worldwide) nature and severity of the defective airbags manufactured by Takata, including the Defective Models by the Honda Defendants:

> Today, more than 14 million vehicles have been recalled by 11 automakers over rupture risks involving air bags manufactured by the supplier, Takata. That is about five times the number of vehicles recalled this year by General Motors for its deadly ignition switch defect.
>
> Two deaths and more than 30 injuries have been linked to ruptures in Honda vehicles, and complaints received by regulators about various automakers blame Takata air bags for at least 139 injuries, including 37 people who reported air bags that ruptured or spewed shrapnel or chemicals.[5]

57.    U.S. federal prosecutors have taken notice of Takata's failure to properly report the problem with its airbags and are trying to determine whether Takata misled U.S. regulators about

---

[4] *See* http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 13, 2014).
[5] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

the number of defective airbags it sold to automakers.

58.    Takata and Honda knew or should have known that the Takata airbags installed in millions of vehicles, including the subject Vehicle, were defective. Both Takata and Honda, who concealed their knowledge of the nature and extent of the defects from the public, have shown a blatant disregard for public welfare and safety.

## FACTUAL ALLEGATIONS

### A.  Takata is a Major Manufacturer of Airbags and Inflators

59.    Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags. Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.

60.    Airbags made up 37.3% of Takata's automotive safety products business in 2007.

61.    Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

62.    The airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted when deployed. The redesigned airbags are inflated by means of an explosive based on a common compound used in fertilizer. That explosive is encased in a metal canister.

63.    Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream."[6]

64.    Based on that "dream," they claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[7] Takata has failed to live up to its dream

---

[6] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.
[7] *Id.*

by manufacturing, distributing, and selling airbags that can cause serious bodily injury or death.

**B.  Honda Field Reports and Takata Internal Testing Reveal a Problem**

65.    Takata has known since at least 2004 that Takata airbags, and particularly the inflator component, were defective.

66.    That year, Honda had received its first complaint related to Takata airbag inflator rupture, and had taken action to immediately share that information with the company.  More specifically, in May 2014, a Takata airbag had violently exploded in a Honda Accord, and shot out metal fragments which seriously injured the car's driver.  After Honda alerted Takata to the ruptured airbag, Takata reported back to Honda that it was also unable to find a cause for the airbag failure.[8] A former Takata lab employee who examined that airbag reported that the "inflator that ruptured in the Accord and injured the car's driver that year 'looked like it had exploded, and had a hole punched out of the side of the canister.'"[9]  Nevertheless, Honda "determined that the supplier 'provided a reasonable explanation of this event as an anomaly,'" and did not issue a recall or seek the involvement of federal safety regulators.[10]

67.    *The New York Times* has revealed, however, that during the summer of 2004, after the airbag explosion in Alabama, Takata secretly conducted tests on 50 airbags, which were retrieved from scrapyards. The tests were performed after normal work hours and on weekends and holidays in Auburn Hills, Michigan and were supervised by Al Bernat, Takata's then Vice President for Engineering.[11]

68.    Two of the airbag inflators that were tested showed cracks and "rapid disassembly" (or

---

[8] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[9] *Id.*
[10] *Id.*
[11] *Id.*

exploded), and Takata engineers theorized that a welding problem with the inflator's canister, which holds the airbag's explosives, made the airbags vulnerable to split or rupture. In response, Takata engineers attempted to design prototypes to remedy the issue.

69.     After three months of testing, however, Takata ordered the testing halted. Lab employees were instructed to destroy all of the data related to the testing, including video and computer backups. Moreover, the airbag inflators and the prototypes were ordered to be disassembled and disposed. According to a former Takata employee, "All the testing was hush-hush … Then one day it was, 'Pack it all up, shut the whole thing down.' It was not standard procedure."

70.     These tests were not disclosed to federal regulators until September of 2009.

71.     Moreover, according to *The New York Times* article, internal Takata documents show that Takata faced a series of quality control problems related to its airbags. In particular, airbags were being delivered to automakers wet or damaged. Airbags were not always properly inspected, and checks that had been introduced to keep airbags in the appropriate condition were being ignored.[12]

72.     Takata was aware that the mishandling of airbags and airbag inflators created a danger. A Takata local manager noted in October 2005 that "[t]he propellant arrangement inside is what can be damaged when the airbags are dropped," which is "why it is important to handle our product properly."[13]

73.     Nonetheless, even after stricter quality controls were introduced, Takata's production facilities would resist taking back damaged or wet airbags, in an effort to keep up with the demand of automakers.[14]

---

[12] Hiroko Tabuchi, "Takata Saw and Hid Risk in Airbags in 2004, Former Workers Say," *New York Times* (Nov. 6, 2014).
[13] *Id.*
[14] *Id.*

74.    In February, June and August of 2007, Honda notified Takata of additional airbag explosion incidents. [15]  All three involved defective airbags driving metal fragments into the faces and limbs of car passengers upon deployment of the airbags. These incidents triggered an internal investigation by Takata, including a survey of inflators; however, Honda did not initiate a recall or provide information about the airbag ruptures to federal regulators because it "wanted to await the outcome of a 'failure mode analysis' being conducted by Takata." [16]

75.    Honda settled financial claims with the individuals injured by the airbags. These settlements were confidential.

76.    Honda filed a standard report with U.S. safety regulators on the initial air bag injury in 2004, and followed up with similar filings on the incidents in 2007.  Inexplicably, Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that the airbags posed a substantial risk of serious injury or death when deployed.

77.    *The New York Times* reported that, approximately three months later in 2007, "Takata engineers laid out a theory about what might have gone wrong: Between late 2001 and late 2002, workers at a Takata factory in Monclova, Mexico, had left out moisture-sensitive explosives on the plant floor, making them prone to 'overly energetic combustion.'"[17] However, Takata purportedly assured Honda "that by November 2002, it had overhauled production processes to 'assure proper handling' of all its explosives."[18] Based on those findings and assurances, Honda and Takata "elected to continue monitoring the problem, according to Honda."[19]  Nevertheless,

---

[15] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

"internal documents suggest Takata engineers scrambled as late as 2009 to repair a machine at its Monclova plant that pressed explosive propellant powder into pellets after 'inflators tested from multiple propellant lots showed aggressive ballistics,' according to the internal presentation in June 2009."[20]

78.    Then, without notifying the vehicles' owners, "Honda started collecting Takata-made airbag inflators returned to dealers as part of unrelated warranty claims, which were then sent to Takata engineers. Old airbag inflators from Honda cars at scrap yards were also retrieved and studied."[21] After a yearlong study, "Takata engineers told Honda that they were convinced moisture was at the root of the defect. But only a small number of inflators were affected, Takata told the Honda officials."[22]

79.    Despite this knowledge, neither Honda nor Takata publicly disclosed the danger of the Takata-manufactured exploding airbags to consumers for many years after the first reported incident in 2004, "despite red flags – including three additional ruptures reported to Honda in 2007."[23]

### C.  2008: Recall 08V593

80.    Takata shared the results of the inflator survey analysis with Honda in November of 2008. That analysis indicated an airbag inflator issue.  The results triggered a Honda recall, but for only about 4200 of its vehicles.[24]   This recall occurred over four years after the first airbag

---

[20] Hiroko Tabuchi, "Takata Saw and Hid Risk in Airbags in 2004, Former Workers Say," *New York Times* (Nov. 6, 2014).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *See* NHTSA Campaign Number 08V593000 (Nov. 14, 2008), http://www-odi.nhtsa.dot.gov/owners/SearchResults? searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=08V593&refurl=email (last visited Nov. 13, 2014).

explosion incident in a Honda car.

81.    The November 2008 recall involved certain 2001 Honda Accord and Civic vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").[25]  Honda reported to NHTSA at that time "that it had identified *all* 'possible vehicles that could potentially experience the problem.'"[26] (emphasis added)

### D.  2009: Recall 09V259

82.    Less than six months after Honda's November 2008 recall, in April 2009, the airbag in the Honda Civic, "which was not among the recalled vehicles, exploded after a minor accident in Orlando, Fla."[27] According to articles reporting on the incident, the "air bag explosion sent a two-inch piece of shrapnel flying. When highway troopers found [the driver], with blood gushing from a gash in her neck, they were baffled by the extent of her injuries. At Honda, engineers soon linked the accident to the previous ruptures."[28]

83.    The following month, in May 2009, an Oklahoma driver was killed "when the airbag in her 2001 Honda Accord exploded out of her steering wheel after a minor crash."[29]  Following this accident and fatality, "Honda only filed the required early warning reports, which do not allow for specifics about the [airbag] ruptures."[30]

84.    Two additional deaths were subsequently "linked to exploding air bags, in Oklahoma and

---

[25] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.
[26] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[27] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014); Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[28] *Id.*
[29] *Id.*
[30] *Id.*

Virginia, both in 2009 and [both] in Honda vehicles."[31]

85.    Takata then reported to Honda that the defective airbag components had been made at its factory in Moses Lake, Washington. At the time, Takata engineers explained to Honda that "[b]etween 2000 and 2002, a flaw in a machine that presses air bag explosives into wafers had made the explosives unstable."[32]  The Takata engineers further explained to Honda that with "the defective air bags, explosives in the metal inflator, which would normally burn down and produce the nitrogen gas to inflate the air bag, instead burn aggressively and cause the inflator to burst, shooting hot fragments through the air bag's fabric."[33]

86.    *The Wall Street Journal* subsequently reported that, after two years of investigation, "Honda and Takata found that a machine at Takata's Moses Lake factory in Washington state had failed to compress chemicals firmly enough. That left the inflators vulnerable to moisture, potentially causing the bags to inflate more forcefully than they were supposed to."[34] At that time, Takata "acknowledged that the defect covered a wider range of vehicles than initially estimated, but explained that the plant had made numerous upgrades to its machinery in late 2002, which it thought had improved the quality of its explosives."[35]

87.    In June of 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.  Honda subsequently received two more claims of "unusual

---

[31] Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[32] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[33] *Id.*
[34] Colum Murphy and Eric Pfanner, "Takata Faces Rocky Road After Recalls," *The Wall Street Journal* (Oct. 1, 2014).
[35] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

deployments."

88.    As a result of Takata's June 2009 follow up report and the additional claims of "unusual driver air bag deployments," on June 30, 2009, Honda expanded the recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").[36]

89.    In August 2009, NHTSA Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[37]

90.    NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V-593 recall population."[38]

91.    NHTSA Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.[39]

92.    In Honda's September 2009 reply to NHTSA, the automaker said that its information about the "unusual deployments" came from Takata:   "We understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[40] Honda further stated:

---

[36] *See* NHTSA Campaign Number 09V259000 (July 8, 2008), http://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=09V259&refurl=email (last visited Nov. 13, 2014).
[37] Aug. 19, 2009 Letter from NHTSA to American Honda Motor Co.
[38] Id.
[39] Id.
[40] Sept. 16, 2009 Letter from Honda American Motor Co. to NHTSA, at 1.

> Based on our current understanding of the causal factors and the characteristics of suspect inflators as determined by TK Holdings, Inc., we believe that we have included all vehicles that could be affected by this defect.

93.     Honda also reported, based on information from Takata, the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators." Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "one production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.[41]

94.     Honda also disclosed to NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls.  Honda also, for the first time, told NHTSA about the 2004 incident involving an "unusual deployment" of the vehicles airbag.  Honda claimed that it "only recently were reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[42]

95.     At least four complaints have been submitted to NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

### E.  Takata's Contact with NHTSA

96.     In its communications with NHTSA, Takata continually gave misleading or incorrect information about the airbags it manufactured that were part of the recalls.

97.     On November 20, 2009, NHTSA requested information from Takata as part of their ongoing investigation into the airbag inflators that triggered the 2009 Recall.

98.     In December 2009, a Honda Accord hit a mail truck in Virginia.  The vehicle's airbag

---

[41] Id. at 1.
[42] Id. at 4.

exploded, "propelling shrapnel into [the driver's] neck and chest, and she bled to death in front of her three children, according to a lawsuit filed by her family."[43]

99.    Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response").  Both responses provided vague and misleading information about the seriousness of the problem.

100.    In both responses, Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls.  However, in the Full Response, Takata states that there were, in fact, differences in the production processes between the lots.

101.    In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  They claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000.  They also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

102.    Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata admitted, its records did not have that information.  Instead, they gave just the manufacturing dates.

103.    In both the Partial Response to NHTSA on December 23, 2009, and the Full Response on February 19, 2010, Takata stated that: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 **to any customers other than Honda. The physical characteristics of the inflator**

---

[43] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

**housing used in the Honda vehicles subject to these recalls are unique to Honda**."[44] This statement would prove to be untrue.

104.    In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

105.    In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant.  Takata further asserted that while they did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-related defect."[45]

106.    Takata wrote in its Full Response that it "believed – [redacted] – that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12 2009."[46]

107.    NHTSA was apparently satisfied with Takata's February 19, 2010 responses to its November 20, 2009 request for information, because on May 6, 2010, NHTSA closed its investigation into the Takata-manufactured airbags. In summary, NHTSA stated:

> This [Recall Query "RQ"] investigation was opened to collect and analyze additional information to better evaluate the scope and timeliness of Honda's two safety recalls addressing rupturing of the driver's side air bag inflators (08V-593 and 09V-259).

---

[44] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA, at 2.
[45] Feb. 19, 2010 Letter from Takata to NHTSA, at 5.
[46] *Id.* at 11-12.

In an earlier response to [Recall Management Division's "RMD's"] request for information, Honda indicated that the second recall (09V-259), essentially an expansion of the first (08V-593), was necessary since later information informed that the source of the defect was different than originally postulated, and so the scope of the vehicles affected changed. Honda indicated that it had relied on its supplier of the air bag inflators, Takata, Inc. (Takata), in studying the possible sources of the inflator ruptures and identifying the recall populations. Accordingly, RMD issued a request for information to Takata on November 20, 2009, and Takata provided a partial response on December 23, 2009. Takata then provided its complete response on February 19, 2010.

Takata informed [Office of Defects Investigation "ODI"] that, after analysis of several ruptured inflators, Takata and Honda initially attributed the defect to handling of the propellant during inflator assembly that could have yielded increased moisture levels that, when coupled with thermal cycling in automobiles over time, could lead to reduced propellant density and overly aggressive combustion during air bag deployment. However, it discovered upon review of inflators returned from the 08V-593 recall campaign, some of which fell outside the manufacturing range when Takata suspected the propellant was exposed to elevated moisture, that the source of the defect was more likely due to problems with a specific compression press (Stokes press) used to form the inflator's propellant. Specifically, the propellant tablets produced by the press were found to be less dense, and therefore more susceptible to overly aggressive combustion during air bag deployment. Takata identified the manufacturing time frame over which the tablets were shown to have less dense properties as the end of calendar year 2000. Takata informed Honda of its discovery on or about June 12, 2009. Honda made its defect decision and then notified NHTSA of it on June 30, 2009. Honda then supplemented its filing with an identification of the specific vehicles to be included in the campaign, as well as identifying additional models to be included, on July 29, 2009.

As with the 08V-593 campaign, Takata examined inflators returned from the 09V-259 campaign, and some of which were manufactured outside of the range when the Stokes press was found to have produced less dense propellant (beyond the end of February 2001). It provided those findings to Honda and Honda decided to expand safety recall 09V-259 to include all vehicles with inflators containing propellant manufactured using the Stokes press. Honda notified NHTSA of its decision on February 9, 2010.

*Based upon all available information, there is insufficient information to suggest that Honda failed to make timely defect decisions on information it was provided. Also, given that all inflators with propellant manufactured using the Stokes press have been recalled, there are no additional vehicles to be investigated and campaigned. Accordingly, this RQ is closed.* (Emphasis added)

108.    As The New York Times subsequently reported, in the months following NHTSA's

2009/2010 request for information, Takata engineers came up with yet another explanation for the ruptures: "Beginning in September 2001, machine operators at the Moses Lake plant could have inadvertently switched off an 'auto reject' function that weeded out poorly made explosives that can become unstable, they said, according to regulatory filings and Honda officials."[47] However, Takata assured Honda at the time that, "as part of the upgrades at that plant, in September 2002, the supplier had added a locking mechanism that prevented workers from turning the auto-reject function off, according to filings later made by Takata."[48]

109.    The Wall Street Journal further reported that "Honda and Takata discovered more problems. At Moses Lake, employees had switched off a mechanism that automatically checked whether the right amount of propellant was loaded in inflators; at a plant in Monclova, Mexico, a dehumidifier that kept parts dry hadn't been turned on. At times poor record-keeping meant Honda and Takata couldn't figure out which cars had defective bags. After each discovery, recalls mounted."[49]

110.    Both Honda and Takata represented to the public and NHTSA that the total number of affected vehicles was quite small.

### F.  2010: Recall 10V041

111.    In 2010, merely months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2CL vehicles, while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010 Recall").

---

[47] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[48] *Id.*
[49] Colum Murphy and Eric Pfanner, "Takata Faces Rocky Road After Recalls," *The Wall Street Journal* (Oct. 1, 2014).

112.    Later in 2010, a 2001 Honda Civic was stopped at a red light in Georgia when the Takata-manufactured airbag "spontaneously deployed."[50] The driver of that vehicle "was hit by metal shards from the canister that housed the air bag's propellant; the shards were sharp enough to penetrate the fabric of the air bag and puncture her neck and carotid artery."[51]

113.    Honda's explanation for the airbag defects changed yet again.  Honda explained that there are two different manufacturing processes utilized in the preparation of an airbag propellant. While one process is within specification, the other is not.  Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

### G.  2011: Recall 11V260

114.    Recall No. 11V-260, issued by Honda in April 2011 ("2011 Recall"),  involved an additional 603,241 Honda and Acura vehicles, and involved the following models: 2001-2002 Honda Accord, 2001-2002 Honda Civic, 2002-2003 Honda CR-V, 2002 Honda Odyssey, 2002-2003 Acura TL, and 2003 Acura CL.63 This recall campaign was related to prior recalls 08V-593 (Nov. 2008), 09V-259 (July 2009) and 10V-041 (Feb. 2010).

115.    As part of this recall, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions.

116.    In September 2011, a driver in Puerto Rico crashed his Honda Civic, "deploying airbags that launched 'sharp pieces of metal' toward him, causing extensive injuries," according to a lawsuit he filed against Honda.[52]  Although Honda reached a confidential settlement with the driver

---

[50] Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[51] *Id.*
[52] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times* (Oct. 20, 2014).

in 2013, it "does not appear to have filed a report on the case with regulators."[53]

117.    Honda reported its death and injury tallies to regulators only in a confidential submission in December 2011, when it issued a fifth limited recall for the rupture defect, according to NHTSA.[54] That recall expanded Recall No. 11V-260 (April 2011) to include an additional 272,779 Honda and Acura vehicles. The expanded recall also included 604 airbags sold as replacement parts, however, because Honda was "unable to ascertain on which vehicles the 604 replacement air bags were installed, an additional 603,241 vehicles" were also recalled.[55]

118.    Collectively, the total number of Honda and Acura vehicles that had been recalled by the end of 2011 because they contained Takata-manufactured airbags was over 1.7 million vehicles.[56]

### H.  2013: Recall 13V132

119.    By 2013, it became clear that the defective airbag issue was far more widespread than Takata or Honda initially reported to NHTSA.

120.    According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible."  Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

> On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  Honda stated: A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing

---

[53] *Id.*

[54] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

[55] *See* NHTSA Campaign Number 11V260000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=11V260&refurl=email (last visited Nov. 13, 2014).

[56] *Id.*

processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.[57]

121.    On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for their 2001-2003 Civic, 2002-2003 CR-V, and their 2002 Odyssey vehicles with NHTSA.    In that notification, Honda asserted that 561,422 vehicles could be affected by the following part defect:

**Defect description:**
In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure.  If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture.  In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant.[58]

122.    On April 11, 2013, Takata filed a Defect Information Report titled "Certain Airbag Inflators Used as Original Equipment" ("Takata DIR").   In that report, Takata identified the defective airbags as follows:

Certain airbag inflators installed in frontal passenger-side airbag modules equipped with propellant wafers manufactured at Takata's Moses Lake, Washington plant during the period from April 13 2000 (start of production) through September 11, 2002…and certain airbag inflators manufactured at Takata's Monclova, Mexico plant during the period from October 4, 2001 (start of production) through October 31, 2002….[59]

123.    It wasn't until its April 2013 Report that Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[60]

124.    Takata asserted that it did not know how many inflators were installed in vehicles, as it did

---

[57] April 10, 2013 Letter to NHTSA, at 2-3.
[58] *Id.* at 2.
[59] Takata April 11, 2013 DIR at 3.
[60] *Id.* at 2-3

not have those records. While it did not have the information to estimate the number of vehicles affected, Takata still insisted that the total number of installed inflators would be extremely low.[61]

125.    Takata described the defect as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force. . . . In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture conditions. These wafers could have absorbed moisture beyond the allowable limits . . . . In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment.
>
> This could create excessive internal pressure within the inflator and the body of the inflator could rupture.[62]

### I.    2013 Recalls and Notices Relating to Defective Airbag Inflators

126.    In April of 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of **3.6 million** vehicles containing Takata airbags.

127.    In September 2013, a California driver was killed after the airbag in his 2002 Acura ruptured. As *The New York Times* reported:

> The authorities have not determined a reason for the injuries, though his coroner's report cited tears in his airbag and facial trauma from a foreign object.
>
> And problems persist with Honda's reporting of potential defects.
>
> In at least four more recent suspected ruptures, including the one linked to [the California driver's] death, Honda has not filed a so-called early warning report with safety regulators, as is required in cases where there is a claim of defect that resulted in an injury or death, according to case lawyers and legal filings.[63]

---

[61] *Id.* at 3
[62] *Id.* at 3-4
[63] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times* (Oct. 20, 2014).

128.    In June 2014, a low-speed accident involving a 2005 Honda Accord in California caused the car's driver air bag "to 'detonate,' sending hot metal and plastic shrapnel into the cabin."[64]

129.    On June 11, 2014, NHTSA's Office of Defects Investigation ("ODI") published an ODI Resume for a preliminary evaluation of Investigation No. PE 14-016. That document stated that NHTSA was opening an investigation "in order to collect all known facts from [Takata] and the vehicle manufacturers that it believes may have manufactured vehicles equipped with inflators produced during the same period as those that have demonstrated rupture events in the field."

130.    Also on June 11, 2014, Takata informed NHTSA that it "believes that an [sic] number of the inflators identified above were provided to the following vehicle manufacturers for use in vehicles sold in the United States (the manufacturers are listed in alphabetical order): BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota." Takata's June 11, 2014 letter further stated:

> If we determine that any of those inflators were sold to other vehicle manufacturers, we will let you know promptly.
>
> ***Takata is not certain which models or model years of vehicles are equipped with the subject inflators, and it does not know how many of those vehicles were sold in or are registered in the States to be covered by the requested field actions.*** That information will need to be obtained from the affected vehicle manufacturers. (Emphasis added)

131.    On June 20, 2014, Honda issued additional Recalls for a total of nearly 4.5 million Honda and Acura vehicles that contained defective Takata-manufactured airbags:

> (a) Recall No. 14V-349 involved 988,440 Honda vehicles, and involved the following models: 2002-2003 Honda Civic, 2002-2003 Honda CR-V, 2002-2003 Honda Odyssey, 2003 Honda Accord, 2003 Honda Element, 2003 Honda Pilot, and 2003 Acura MDX. The recall was necessary "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could

---

[64] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[65]

(b)  Recall No. 14V-351 involved 2,803,214 Honda vehicles, and involved the following models: 2001-2007 Honda Accord, 2001-2005 Honda Civic, 2002-2006 Honda CR-V, 2003-2011 Honda Element, 2002-2004 Honda Odyssey, 2003-2007 Honda Pilot, 2006 Honda Ridgeline, 2003-2006 Acura MDX, 2002-2003 Acura TL, and 2003 Acura CL. This recall was necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants."[66]

(c)  Recall No. 14V-353 involved 698,288 Honda vehicles, and involved the following models: 2003-2005 Honda Accord, 2003-2005 Honda Civic, 2003-2005 Honda CR-V, 2003-2005 Honda Pilot, 2003-2004 Honda Odyssey, 2003-2004 Honda Element, 2006 Honda Ridgeline, 2003-2005 Acura MDX, and 2005 Acura RL. This recall was also necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants."[67]

132.    By the end June 2014, the number of vehicles that had been recalled due to defective Takata-manufactured airbags had increased to over 6 million. However, automakers, including the Honda Defendants, had still not yet recalled all of the vehicles containing Takata-manufactured airbags.

133.    On July 8, 2014, Honda expanded a "two million vehicle air bag recall by as many as one

---

[65] *See* NHTSA Campaign Number 14V349000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V349 (last visited Nov. 14, 2014).

[66] *See* NHTSA Campaign Number 14V351000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V351 (last visited Nov. 14, 2014).

[67] *See* NHTSA Campaign Number 14V353000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V353 (last visited Nov. 14, 2014).

million more vehicles in California."100 *The New York Times* reported that "[a] defective inflator could explode in a crash, sending shards of its metal casing into the passenger compartment. The inflator was made by Takata Corporation, which has said the propellant inside the inflator was not properly prepared and was too powerful."101 The vehicles affected by this recall included the following models: 2001-2007 Honda Accord, 2001-2005 Honda Civic, 2002-2006 Honda CR-V, 2003-2011 Honda Element, 2002-2004 Honda Odyssey, 2003-2007 Honda Pilot, 2006 Honda Ridgeline, 2003-2006 Acura MDX, 2002-2003 Acura TL, and 2002-2003 Acura CL.[68]

134.    On August 18, 2014, *The New York Times* reported that NHTSA had "deepened" its investigation of Honda's airbags. The article further reported that "[f]ederal regulators have intensified an investigation into the inadvertent deployment of side air bags on 2008 Honda Accords," as they were "concerned that the side air bags along the outer edges of the ceiling and the seats may deploy when a door is slammed."[69]

135.    In August 2014, Honda issued yet another recall of Honda and Acura vehicles, "it's ***ninth*** for the defect – bringing to six million the total of recalled Honda and Acura vehicles" (emphasis added).[70]

136.    On October 2, 2014, a Florida resident "died four days after she crashed her 2001 Honda Accord and was pierced in the neck by debris from the air bag, police said. Authorities originally believed her wounds were caused by an assault."[71] As *The New York Times* reported:

---

[68] Christopher Jensen, "Honda Expands Takata Air Bag Inflator Recall," *New York Times* (July 8, 2014).
[69] Christopher Jensen, "N.H.T.S.A. Deepens Investigation of Honda Accord Air Bags," *New York Times* (Aug. 18, 2014).
[70] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[71] Jeff Bennett, Christopher Matthews and Christina Rogers, "Air Bag Recalls Trigger New Scrutiny," *The Wall Street Journal* (Oct. 22, 2014).

Hien Tran lay dying in intensive care this month after a car accident, as detectives searched for clues about the apparent stab wounds in her neck.

An unlikely breakthrough arrived in the mail a week after she died from her injuries. It was a letter from Honda urging her to get her red Accord fixed, because of faulty airbags that could explode.

"The airbag," said Tina Tran, the victim's twin sister. "They said it was the airbag."

Ms. Tran became at least the third death associated with the mushrooming recalls of vehicles containing defective airbags made by Takata, a Japanese auto supplier. More than 14 million vehicles from 11 automakers that contain the airbags have been recalled worldwide.

When Ms. Tran crashed her car, the airbag, instead of protecting her, appeared to have exploded and sent shrapnel flying into her neck, the Orange County sheriff's office said.[72]

137.    On October 22, 2014, NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models including Honda which had 5,051,364 potentially affected vehicles.[73]

138.    Over the past 13 years that Takata has known there was a problem with the safety of their airbags, there have been at least four deaths and 139 injuries linked to defective Takata airbags.

**J.    Takata Fails to Meet Safety Standards and Maintain Airbag Quality**

139.    As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process.    Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011.[74]

---

[72] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times* (Oct. 20, 2014).

[73] Ben Klayman, "U.S. regulators expand number of vehicles affected by Takata recalls," *Reuters* (Oct. 22, 2014), *available at* http://www.reuters.com/article/2014/10/22/us-autos-takata-warning-idUSKCN0IB03B20141022.

[74] Joanna Zuckerman Bernstein, Ben Klayman, and Yuko Kubota, "Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal," *Reuters* (Oct. 17, 2014), *available at* http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018.

140.    In March 2011, a Takata supervisor at the Monclova plant sent an e-mail to other employees stating "A part that is not welded = one life less, which shows we are not fulfilling the mission." The title of the e-mail was "Defectos y defectos y defectos!!!!."[75]

141.    Despite all the theories proposed by Takata to federal regulators as to the sources of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds, and even chewing gum dropped into at least one inflator as reasons for the defects. The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

### K.  The Defective Vehicles Containing Takata-Manufactured Airbags Were Sold as "Safe" and "Reliable"

142.    In advertisements and promotional materials, the Honda Defendants maintained that their vehicles are safe and reliable.

143.    For example, the Honda Defendants maintained:

(a) **Honda**: "Honda is committed to providing safety for everyone—that means crash protection not only for our own drivers and passengers, but also for the occupants of other vehicles, and injury mitigation for pedestrians." "As a leader, Honda looks beyond government regulations, studying real world situations to develop new safety technologies for everyone."[76]

144.    Purchasers of the Defective Vehicles were thus were led to believe their vehicles were safe and reliable vehicles.

145.    Vehicles with defective airbag systems are not "safe" and "reliable" as the Defective Vehicles were advertised and promoted to be.

146.    As detailed above, additional recalls (or expanded recalls) have been issued after NHTSA's

---

[75] *Id*.
[76] http://corporate.honda.com/safety/ (last visited Nov. 14, 2014).

list was published on October 22, 2014[77], and it is likely that additional vehicle recalls will be announced in the future.

147.    In fact, Honda just recently announced, on November 6, 2014, that it would "soon expand its U.S. recalls involving potentially explosive air bags made by Takata Corp., adding a small number of vehicles in certain hot and humid regions and expanding the scope of existing recalls."[78] In addition, Honda reported that it would "also reclassify some cars that have been part of a regional 'safety improvement campaign,' making them part of a more severe regional 'safety recall.'"[79]

148.    Additionally, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database."[80]

149.    Moreover, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags.[81]

### L.  Federal Investigations

150.    NHTSA is now investigating Takata airbags manufactured between 2000 and 2007  to determine whether Takata airbag inflators made during that time were improperly sealed.[82]

151.    In a Consumer Advisory dated October 22, 2014, NHTSA said:

---

[77] http://www.nhtsa.gov/About+NHTSA/Press+Releases/2014/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 14, 2014).

[78] Yoko Kubota, "Honda to Expand Takata Air-Bag Recalls in Some Areas," *The Wall Street Journal* (Nov. 6, 2014).

[79] *Id.*

[80] *See* http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 14, 2014).

[81] *See* Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014); Colum Murphy and Eric Pfanner, "Takata Faces Rocky Road After Recalls," *The Wall Street Journal* (Oct. 1, 2014).

[82] Klayman, *supra* n.20

The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

On October 29, 2014, NHTSA's Deputy Administrator sent a letter to Takata in follow-up to NHTSA's "ongoing investigation into defective Takata air bags, and to express a number of serious concerns that must be resolved to ensure public safety." NHTSA's letter further stated: Takata has supplied tens of millions of air bag inflators to various vehicle manufacturers over the last fifteen years that, when functioning as designed, save lives and reduce or prevent serious injuries in crashes. However, as you are well aware based on months of discussions your technical experts have had with my staff, millions of Takata inflators are being recalled because, when activated, a growing number are creating an unacceptable risk of deaths and injuries by projecting metal fragments into vehicle occupants rather than properly inflating the attached air bag. Further action by Takata is required to better understand the failures and further mitigate the safety risk.
Actual and potential inflator failures have led to a large number of recalls in the last eighteen months. General Motors, Ford, Chrysler, Toyota, Nissan, Honda, Subaru, Mitsubishi, BMW, and Mazda have all initiated recall campaigns to address the serious safety risks posed by inflator failures. These recalls encompass a population of millions of vehicles. I am deeply troubled by this situation because of the potential risk for death and injury as well as the erosion of public confidence in a proven life-saving technology.

152.    On October 29, 2014, NHTSA sent a letter to ten automakers. The letter stated that "[t]he ongoing cooperation of all manufacturers who have recalled vehicles is essential to address this safety risk," and that the "NHTSA team is engaged with you in critical work to better understand the failures and take action to remedy the safety risk." NHTSA's letter also asked the automakers to provide NHTSA with information as to their recall process, urged a faster response from them, and stated that "more can and should be done as soon as possible to prevent any further tragedies."

153.    On October 30, 2014, *The New York Times* reported that NHTSA "ordered the airbag supplier Takata to turn over documents and answer questions under oath related to defective airbag

inflators." The order "demanded that Takata turn over records related to the production, testing and subsequent concerns raised internally and by automakers over the airbags, as well as communications between the company and automakers about defect concerns."[83]

154.    Also on October 30, 2014, NHTSA's Office of Defects Investigation ("ODI") published an ODI Resume for Investigation No. AQ 14-004. That document stated that NHTSA had opened an investigation "in order to investigate the extent and scope of Honda's reporting failures, as well as the reason(s) for such failures and the steps being taken by Honda to assure full compliance with TREAD reporting requirements." The document further stated:

> **NHTSA has received information indicating that American Honda Motor Co. (Honda) failed to report incidents involving Takata airbags, which resulted in a death or injury, and for which claims were asserted against Honda.**
>
> The TREAD Act requires, among other things, that all manufacturers of 5,000 or more light vehicles submit to NHTSA, on a quarterly basis, Early Warning Reports (EWRs) that include information on each and every incident involving death or injury, identified in a claim against the manufacturer or a notice received by the manufacturer alleging or proving that the death or injury was caused by a possible defect. Manufacturers must submit EWRs to NHTSA no later than 60 days after the last day of each calendar quarter.
>
> **NHTSA is also concerned that Honda's reporting failures go beyond the Takata incidents described above, and NHTSA has received information from Honda indicating that Honda may have failed to meet its TREAD reporting obligations, including reporting other death or injury incidents.** (Emphasis added).

155.    On November 3, 2014, NHTSA issued a Special Order – separate from NHTSA's October 30, 2014 investigation – demanding documents from Honda regarding airbags. As reported by the *Detroit Free Press*: "The nation's top auto safety regulator has demanded Honda to show by Nov. 24 what and when it knew about deaths and injuries caused by exploding air bags made by Takata,

---

[83] Aaron Kessler, "Takata, Supplier of Defective Airbags, Ordered to Submit Records," *New York Times* (Oct. 30, 2014).

a supplier at the center of an expanding recall."[84] A second article reported on the Special Order as follows:

> The National Highway Traffic Safety Administration said today it wants Honda to produce even more documents and data than it asked for earlier this week related to the recall of millions of air bags.
>
> NHTSA issued a 15-page special order Wednesday asking the Japanese automaker to produce all documents and communications it has had with air bag supplier Takata about its air bag inflators and recalls of vehicles equipped with the faulty inflators. …
>
> "We are compelling Honda to produce documents and answer questions under oath relevant to our ongoing investigation into defective air bags made by Takata," David Friedman, NHTSA's deputy administrator, said in a statement today. "We expect Honda's full cooperation as we work to keep the American public safe."
>
> Today's action is on top of an investigation launched earlier this week by NHTSA asking Honda to show by Nov. 24 what and when it knew about deaths and injuries caused by exploding air bags made by Takata.  That investigation is focused on whether Honda reported information about accidents related to the recalls in a timely manner.[85]

156.    The U.S. Department of Justice has reported that it is investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.

157.    In addition to a federal grand jury subpoena issued November 13, 2014, by the United States District Court for the Southern District of New York, Takata also faces a hearing before the United States Senate Committee on Commerce on November 20, 2014, to include company officials from Takata as well as government officials from NHTSA.

---

[84] Greg Gardner, "NHTSA Demands Honda Documents on Air Bags," *Detroit Free Press* (Nov. 5, 2014).
[85] Brent Snavely, "NHTSA Issues 2nd Order for Honda Recall Documents," *Detroit Free Press* (Nov. 5, 2014).

### M. Defective Vehicle Owners Are Warned About Their Airbags; Remediation Is Lacking

158.    On October 20, 2014, NHTSA "warned the owners of about 4.7 million vehicles with defective air bags made by the Takata Corporation that they should 'act immediately' to have them fixed."[86]

159.    Two days later, on October 22, 2014, NHTSA published a Consumer Advisory entitled "Vehicle Owners with Defective Airbags Urged to Take Immediate Action." The Consumer Advisory stated:

> The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.
>
> "Responding to these recalls, whether old or new, is essential to personal safety and it will help aid our ongoing investigation into Takata airbags and what appears to be a problem related to extended exposure to consistently high humidity and temperatures. However, we're leaving no stone unturned in our aggressive pursuit to track down the full geographic scope of this issue," said NHTSA Deputy Administrator David Friedman.[87]

160.    The Consumer Advisory also urged consumers to "contact their manufacturer's website to search, by their vehicle identification number (VIN) to confirm whether their individual vehicle has an open recall that needs to be addressed" and to "check their VIN periodically as manufacturers continue to add VINs to the [recall] database."[88]

---

[86] Christopher Jensen, "Defect in Takata Air Bags Prompt Urgent Warning to Drivers," *New York Times* (Oct. 20, 2014).
[87] http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 14, 2014).
[88] *Id.*

161.    In a statement from Honda regarding Airbag Inflator Regional Safety Improvement Campaigns, dated October 22, 2014, Honda announced:

> If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components.

162.    However, Honda has acknowledged that it would not send out recall letters to car owners or lessees until there are parts available, meaning that many drivers would not receive notices for weeks or longer as they continue to drive vehicles with potentially deadly airbags.

## CONDITIONS PRECEDENT

163.    All conditions precedent to the bringing of this action and Plaintiffs' right to the relief sought herein have occurred, have been performed or have been excused.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

164.    Upon information and belief, Defendant Takata has known of the defects in its airbags since at least 2004. Defendant Honda has also known of the defects in the Takata airbags in Honda's vehicles since 2004. The Defendants knew well before the Plaintiff's Decedent purchased the Vehicle yet concealed from and failed to notify the Plaintiff, Plaintiff's Decedent, and/or the public about the full and complete nature of the defects in the airbag system or systems present in the Vehicle or other vehicles of its kind prior to the Incident on February 15, 2008.

165.    Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

166.    Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, behavior which is ongoing.

167.    Accordingly, this action has been timely commenced within any applicable period of limitation.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
#### (Negligence, Gross Negligence, Willful and Wanton Conduct: Design Defect As to All Defendants)

168.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

169.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold the Vehicle and its components, including but not limited to, equipping it with its driver's frontal airbag system.

170.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. designed the Vehicle and its driver's frontal airbag system and each Defendant owed Plaintiff's Decedent Mrs. Wolfe a duty of reasonable care to design, select, inspect, test, assemble, equip, market, distribute, and sell the Vehicle and its components, including the driver's frontal airbag system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

171.    At all times relevant herein, as designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., the Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its driver's frontal airbag system is and was inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect

in foreseeable accidents occurring in the real world environment of its expected use.

172.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless and careless in the design of the subject Vehicle and breached their duties of care owed to Plaintiff's Decedent by:

    A.  failing to adopt and implement adequate safety hierarchy procedures and policies;

    B.  failing to design, manufacture, test, assemble and/or install the driver's airbag system so as to prevent it from having excessively energetic propellant and deploying in foreseeable collisions with excessive force;

    C.  failing to design, test, assemble and/or install the driver's airbag system so that it was properly vented and would adequately deflate under foreseeable impacts;

    D.  failing to ensure that the subject Vehicle was reasonably crashworthy;

    E.  failing to exercise reasonable care in the design of the subject Vehicle and its driver's frontal airbag system;

    F.  failing to exercise reasonable care in the testing of the subject Vehicle and its driver's frontal airbag system;

    G.  failing to exercise reasonable care in the inspection of the subject Vehicle and its driver's frontal airbag system;

    H.  failing to adopt and implement adequate warnings regarding subject Vehicle and its driver's frontal airbag system;

    I.  failing to incorporate appropriate quality assurance procedures in design of the of the subject Vehicle and its driver's frontal airbag system;

    J.  and on such other and further particulars as the evidence may show.

173.    At all times relevant, as a direct and proximate result of Defendants Takata, Takata, Inc.,

TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s negligence and the breaches complained of herein, Plaintiff's Decedent Mrs. Wolfe suffered pre-death injuries including spinal fracture, excruciating pain and suffering, mental anguish, and emotional distress, from the time of her accident on February 15, 2008 up until March 3, 2008, or the date of her wrongful death.

174.    By reason of the foregoing, and pursuant to S.C. Code Ann. § 150-5-90, Plaintiff entitled to recover damages for all of Mrs. Wolfe's pre-death general and special damages proximately caused by Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s  negligent and grossly negligent acts and/or omissions.

175.    WHEREFORE, Plaintiff demands judgment against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., jointly and severally, for all actual and compensatory damages suffered by Plaintiff's Decedent prior to her death, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

### SECOND CLAIM FOR RELIEF
### (Negligence, Gross Negligence, Willful and Wanton Conduct: Manufacturing Defect
### As to All Defendants)

176.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

177.    At all times relevant herein, all Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., took part in and/or were responsible for the manufacture, selection, inspection, testing, design, assemblage, equipment, marketing, distribution, and/or sale of the Vehicle and its component parts, including but not limited to its defective frontal airbag system, to Plaintiff's Decedent at some point prior to the

Incident's occurrence on February 15, 2008.

178.    Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. manufactured the Vehicle and its driver's frontal airbag system and each Defendant owed Plaintiff's Decedent Mrs. Wolfe a duty of reasonable care to manufacture, select, inspect, test, assemble, equip, market, distribute, and sell the Vehicle and its components, including the driver's frontal airbag system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

179.    At all times relevant herein, as manufactured, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., the Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its driver's frontal airbag system is inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

180.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless and careless and breached their duties of care owed to Plaintiff's Decedent by:

    A.  failing to adopt and implement adequate safety hierarchy procedures and policies;

    B.  failing to manufacture, test, assemble and/or install the driver's airbag system so as to prevent it from having excessively energetic propellant and deploying in foreseeable collisions with excessive force;

C.  failing to manufacture, test, assemble and/or install the driver's airbag system so that it was properly vented and would adequately deflate under foreseeable impacts;

D.  failing to ensure that the subject Vehicle was reasonably crashworthy;

E.  failing to exercise reasonable care in the manufacture of the subject Vehicle and its driver's frontal airbag system;

F.  failing to exercise reasonable care in the testing of the subject Vehicle and its driver's frontal airbag system;

G.  failing to exercise reasonable care in the inspection of the subject Vehicle and its driver's frontal airbag system;

H.  failing to adopt and implement adequate warnings regarding subject Vehicle and its driver's frontal airbag system;

I.  failing to incorporate appropriate quality assurance procedures in manufacture of the of the subject Vehicle and its driver's frontal airbag system;

J.  and on such other and further particulars as the evidence may show.

181.  As a direct and proximate result of the Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s, negligence and the breaches complained of herein, Plaintiff's Decedent Mrs. Wolfe suffered pre-death injuries including spinal fracture, excruciating pain and suffering, mental anguish, and emotional distress, from the time of her accident on February 15, 2008 up until March 3, 2008, or the date of her wrongful death.

182.  By reason of the foregoing, and pursuant to S.C. Code Ann. § 150-5-90, Plaintiff entitled to recover damages for all of Mrs. Wolfe's pre-death general and special damages proximately caused by Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s, negligent and grossly negligent acts and/or omissions.

183.    WHEREFORE, Plaintiff demands judgment against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., jointly and severally, for all actual and compensatory damages suffered by Plaintiff's Decedent prior to her death, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## THIRD CLAIM FOR RELIEF
### (Strict Liability In Tort, Section 15-73-10, S.C. Code of Laws, Ann. (1976, as amended)) As to All Defendants)

-

184.    Plaintiff adopts and re-allege each prior paragraph, where relevant, as if set forth fully herein.

185.    At all times relevant herein, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code of Laws (1976, as amended).

186.    Pursuant to S.C. Code § 15-73-10 et seq., Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. are strictly liable for designing, testing, manufacturing, distributing, selling, and/or placing a defective and unreasonably dangerous product into the stream of commerce.

187.    At all times relevant herein, the subject Vehicle and its driver's frontal airbag system was defective and unreasonably dangerous as to its design, manufacture, distribution and warnings, causing the Vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

188.    At all times relevant herein, all Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., took some part in the manufacture

and sale of the subject Vehicle and its driver's frontal airbag system prior to the Incident on February 15, 2008.

189.    At all times relevant, the subject Vehicle was being used in an intended and/or foreseeable manner when the Incident alleged herein occurred. Plaintiff's Decedent neither misused nor materially altered the subject Vehicle, and the subject Vehicle was in the same or substantially similar condition that it was in at the time of purchase.

190.    At all times relevant herein, the subject Vehicle is and was unreasonably dangerous and defective because it was designed, manufactured and sold with an excessively energetic inflator in the driver's frontal airbag system which deployed with dangerously excessive explosive force during air bag deployment in foreseeable collisions, including during the Incident.

191.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. were aware of feasible alternative designs which would have minimized or eliminated altogether the risk of injury posed by the Vehicle and its driver's frontal airbag system.

192.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. had a duty to warn users of the dangers associated with by the Vehicle and its driver's frontal airbag system.

193.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. failed to warn of the inherent and latent defects that made this product dangerous and unsafe for its intended use.

194.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. failed to design, test, manufacture, inspect, and/or sell a product that was safe for its intended use.

195.    As a direct and proximate result of the Defendants, Takata, Takata, Inc., TK Holdings,

Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s,, negligence and the breaches complained herein, Plaintiff's Decedent Mrs. Wolfe suffered pre-death injuries including spinal fracture, excruciating pain and suffering, mental anguish, and emotional distress, from the time of her accident on February 15, 2008 up until March 3, 2008, or the date of her wrongful death.

196.    By reason of the foregoing, and pursuant to S.C. Code Ann. § 150-5-90, Plaintiff entitled to recover damages for all of Mrs. Wolfe's pre-death general and special damages proximately caused by the Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s, negligent and grossly negligent acts and/or omissions.

197.    WHEREFORE, Plaintiff demands judgment against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., jointly and severally, for all actual and compensatory damages suffered by Plaintiff's Decedent prior to her death, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## FOURTH CLAIM FOR RELIEF
### (Failure to Warn As To All Defendants)

198.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

199.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., as manufacturers of subject Vehicle and its driver's frontal airbag system, owed duties to warn of foreseeable dangerous conditions of the subject Vehicle which would impair its safety.

200.    At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland,

Honda Motor, Honda R&D, American Honda, and Honda Mfg. knew or should have known that the subject Vehicle's driver's frontal airbag system had an excessively energetic inflator and would deploy with excessive explosive force in foreseeable collisions.

201.     At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. would have had and had no reason to believe that users would realize this potential danger.

202.     At all times relevant herein, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. affirmatively failed to exercise reasonable care to inform users of the Vehicle's dangerous condition created by the excessively energetic inflator in the driver's frontal airbag system.

203.     As a direct and proximate result of Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s failure to warn of the dangers posed by the excessively energetic inflator in the driver's frontal airbag system in the subject Vehicle and the breaches complained herein, Plaintiff's Decedent Mrs. Wolfe suffered pre-death injuries including spinal fracture, excruciating pain and suffering, mental anguish, and emotional distress, from the time of her accident on February 15, 2008 up until March 3, 2008, or the date of her wrongful death.

204.     By reason of the foregoing, and pursuant to S.C. Code Ann. § 150-5-90, Plaintiff entitled to recover damages for all of Mrs. Wolfe's pre-death general and special damages proximately caused by Defendants, Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg.'s, negligent and grossly negligent acts and/or omissions.

205.     WHEREFORE, Plaintiff demands judgment against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg., jointly and severally, for all actual and compensatory damages suffered by Plaintiff's Decedent prior to her

death, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Implied Warranties As to the Honda Defendants)**

206.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

207.    At all times relevant herein, the Honda Defendants are and were "merchants" as to the subject Vehicle within the meaning S.C. Code Ann. § 36-2-104.

208.    At all times relevant herein, the Honda Defendants manufactured and sold the subject Vehicle which is a "good" within the meaning of these statutory provisions. Consequently, pursuant S.C. Code Ann. § 36-2-314, at the time of its sale, the Honda Defendants impliedly warranted that the subject Vehicle was merchantable, including that it was fit for its ordinary purposes as safe passenger vehicles that it could pass without objection in the trade, and that it was adequately contained, packaged, and labeled.

209.    At all times relevant herein, the Honda Defendants breached the implied warranty of merchantability as it concerns Plaintiff's Decedent because the subject Vehicle was not fit for the ordinary purposes for which it was anticipated to be used—namely as a safe passenger motor vehicle

210.    Specifically, the subject Vehicle's driver's frontal airbag system was unreasonably dangerous and defective because it was designed, manufactured and sold with an excessively energetic inflator in the driver's frontal airbag system which deployed with dangerously excessive explosive force during air bag deployment in foreseeable collisions, including during the Incident on February 15, 2008, which made the subject Vehicle unfit for its ordinary purpose of providing

safe transportation.

211.    At all times relevant herein, the Honda Defendants further breached the implied warranty of merchantability to Plaintiff's Decedent as the subject Vehicle they designed, manufactured and sold contained an excessively energetic inflator in the driver's frontal airbag system which deployed with dangerously excessive explosive force during air bag deployment in foreseeable collisions and, therefore, would not pass without objection in the trade,

212.    At all times relevant herein, the Honda Defendants further breached the implied warranty of merchantability to Plaintiff's Decedent because the subject Vehicle was not adequately contained, packaged, and labeled in that the directions and warnings that accompanied the subject Vehicle did not adequately instruct its owner on the proper use of the Vehicle in light of the an excessively energetic inflator in the driver's frontal airbag system.

213.    As a proximate result of the Honda Defendants' collective and respective breaches of the implied warranty of merchantability, Plaintiff's Decedent, Mrs. Wolfe, suffered pre-death injuries including spinal fracture, excruciating pain and suffering, mental anguish, and emotional distress as a result of the Incident on February 15, 2008.

214.    By reason of the foregoing, and pursuant to S.C. Code Ann. § 150-5-90, Plaintiff is entitled to recover damages for all of Mrs. Wolfe's pre-death general and special damages proximately caused by the Honda Defendants' breaches of the implied warranty of merchantability.

215.    WHEREFORE, Plaintiff demands judgment against the Honda Defendants, jointly and severally, for all actual and compensatory damages suffered by Plaintiff's Decedent prior to her death, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## SIXTH CLAIM FOR RELIEF
### (Wrongful Death As To All Defendants)

216.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

217.    Plaintiff Robert E. Lyon, Jr., is the duly appointed, qualified, and acting personal representative of the estate of Mrs. Wolfe, deceased, who died intestate in the manner alleged herein on March 3, 2008.

218.    Plaintiff Robert E. Lyon, Jr. brings this action pursuant to S.C. Code Ann. §§ 15-51-10 et seq. for the benefit of the statutory beneficiaries of Mrs. Wolfe, the Decedent, as designated by S.C. Code Ann. § 15-51-20, naming himself as personal representative of the Estate of the Decedent to recover for damages, injuries, and losses sustained by reason of the wrongful death of the Decedent on March 3, 2008.

219.    The aforementioned actions of the Defendants as alleged previously herein caused the earlier demise and death of Mrs. Wolfe on March 3, 2008.  The death of Mrs. Wolfe was caused and occasioned by the negligent and grossly negligent acts on behalf of the Defendants as set forth above.

220.     By reason of her untimely death, Mrs. Wolfe's statutory beneficiaries have been deprived of all benefits of her society and companionship and have been caused great mental shock and suffering by reason of her death. They have been and will forever be caused grief and sorrow by the loss of their child's love, society and companionship. They have been deprived of her future experience and judgment. They have incurred expenses for her funeral and final expenses and, as a result of the foregoing, they have sustained personal injuries including, but not limited to:

    A.  pecuniary loss, loss of economic support for family;

    B.  mental shock and suffering;

C.  wounded feelings;

D.  grief and sorrow;

E.  loss of companionship;

F.  deprivation of the use and comfort of the intestate's society;

G.  loss of her experience, knowledge and judgment;

H.  loss of income of the Decedent;

I.  funeral expenses;

J.  and on such other and further particulars as the evidence may show.

221.   Plaintiff, accordingly, as the duly acting, appointed and qualified Administrator of the estate of Mrs. Wolfe, is entitled to recover compensatory damages in an amount to be proven at trial.

222.   Plaintiff also, as a further result of Defendants' reckless, willful, negligent and grossly negligent conduct, is entitled to recover punitive damages in an amount to be determined by the jury in accordance with the law and evidence in this case.

223.   WHEREFORE, Plaintiff prays judgment against the Defendants for actual, consequential, and punitive damages, together with costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## SEVENTH CLAIM FOR RELIEF
### (Survivorship As To All Defendants)

224.   Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

225.   Plaintiff Robert E. Lyon, Jr., is the duly appointed, qualified, and acting personal representative of the estate of Mrs. Wolfe, deceased, who died intestate in the manner alleged herein on March 3, 2008.

226.    Pursuant to S.C. Code Ann. § 15-5-90, Plaintiff also brings this action to recover for the compensatory damages sustained by Mrs. Wolfe prior to her death, including but not limited to pain, suffering, mental anguish, and anticipation of death.

227.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Vehicle, the breach of implied warranties, and the fraudulent, negligent, grossly negligent, and willful and wanton conduct of the Defendants, Mrs. Wolfe was severely and painfully injured, suffered contusions and lacerations, was subjected to the administration of strong medication, was hospitalized and incurred medical expenses, and suffered extreme mental anguish, substantial bodily injury and conscious and continuous, severe physical and mental pain from the time of her injury on February 15, 2008 up until and prior to her death on March 3, 2008.

228.    Plaintiff Robert E. Lyon, Jr., as the duly acting, appointed and qualified Administrator of the estate of Mrs. Wolfe, accordingly is entitled to recover compensatory damages for the survival claim of Mrs. Wolfe in an amount to be proven at trial.

229.    Plaintiff Robert E. Lyon, Jr., as the duly acting, appointed and qualified Administrator of the estate of Mrs. Wolfe, is also entitled to recover punitive damages in an amount to be determined by the jury in accordance with the law and evidence in this case.

230.    WHEREFORE, pursuant to S.C. Code Ann. § 15-5-90, Plaintiff demands judgment against the Defendants for actual, consequential, and punitive damages, together with costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## EIGHTH CLAIM FOR RELIEF
### (Punitive Damages As to All Defendants)

231.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

232.    The actions and inactions of Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to the Plaintiff's Decedent.

233.    More specifically, Defendant Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. acted with a conscious and flagrant disregard for the rights and safety of Plaintiff's Decedent, and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of the Mrs. Wolfe.

234.    By reason of the foregoing, Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. are liable for punitive and exemplary damages.

235.    WHEREFORE, Plaintiffs demand judgment against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and such other and further relief as this Honorable Court or jury may deem just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows:

A.    For a trial by jury and judgment against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda Mfg. for such sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

B.    For exemplary and punitive damages against Defendants Takata, Takata, Inc., TK Holdings, Highland, Honda Motor, Honda R&D, American Honda, and Honda

Mfg.in an amount as a jury may determine to halt such conduct;

C.       For the costs of this suit, including attorney's fees; and

D.       For such other and further relief to which they may be entitled and as this Honorable

Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury as to all issues triable by jury enumerated and set forth in this Complaint.

Respectfully submitted this 21st day of November, 2014.

**MOTLEY RICE LLC**


By:       s/Kevin R. Dean_____
          Joseph F. Rice, Esq. (Fed I.D. 3445)
          Kevin R. Dean, Esq. (Fed I.D. 8046)
          Jodi Westbrook Flowers, Esq. (SC 66300)
          W. Taylor Lacy, Esq. (Fed I.D. 9929)
          Kathryn A. Waites, Esq. (Fed I.D. 11959)
          28 Bridgeside Boulevard
          Mount Pleasant, South Carolina 29464
          Phone: (843) 216-9152
          Fax: (843) 216-9450
          kdean@motleyrice.com

          *ATTORNEYS FOR PLAINTIFF*