# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

|  |  |  |
|---|---|---|
| ROBERT E. LYON, JR., | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 5:14-04485-JMC |
| v. | ) ) | |
| TAKATA CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

### UNITED STATES OF AMERICA'S NOTICE OF APPEARANCE AND STATEMENT OF INTEREST FILED PURSUANT TO 28 U.S.C. § 517 IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR THE PRESERVATION OF EVIDENCE

In response to reports of air bag inflator ruptures, the National Highway Traffic Safety Administration ("NHTSA"), an operating administration within the U.S. Department of Transportation ("DOT"), opened a safety investigation into air bag inflators manufactured by Defendant Takata Corporation and its affiliates (collectively "Takata"). NHTSA's investigation, which involves a nationwide recall of vehicles containing potentially defective inflators, centers on determining the scope of vehicles affected by the defect and the root cause of these inflator ruptures, so that NHTSA and manufacturers can take appropriate measures to remedy unsafe vehicles and vehicle equipment. A core element of NHTSA's investigation is Takata's testing of the recalled inflators and reporting of data and information to NHTSA, which has been ongoing since approximately September 2014. This testing will, NHTSA believes, enable the agency to identify the scope of affected vehicles and the root cause of Takata inflator ruptures and to ensure that the recall remedy is robust and effective. This testing is thus a critical element of the

agency's overall mission to protect public safety.

Plaintiff in this wrongful death case seeks an order that would require Takata to "secure and preserve, in unaltered form," all air bag inflators in its possession that have been removed either under recall proceedings or from "accident or defective field vehicles."[1] Pl.'s Emergency Mot. for Preservation of Evidence ("Mot."), ECF No. 26 at 1-2. If entered by the Court, such an order would put an abrupt halt to Takata's ongoing testing efforts essential to NHTSA's safety investigation. Moreover, this order would require the delivery and preservation of hundreds of thousands of recalled Takata inflators at a single location, and thereby would prohibit any transfer of inflators to other entities for further testing, whether carried out by vehicle manufacturers or NHTSA itself. Without readily available access to inflators, including the ability to oversee destructive testing, NHTSA is unable to conduct an effective investigation. In short, the preservation order requested by Plaintiff would undermine not only the interests of the United States, but also, given the broad potential scope of the identified defect, the safety interests of the general public. Accordingly, the United States respectfully requests that the Court deny Plaintiff's motion for preservation of evidence.

## BACKGROUND

Under the terms of the Highway Safety Act of 1970, which created the agency, NHTSA's mission is to ensure the safety of motor vehicles in the United States. *See* 49 U.S.C. § 30101 *et seq.*; 49 C.F.R. § 501.2. To help fulfill that mission, Congress has authorized NHTSA to investigate safety-related defects in motor vehicles and motor vehicle equipment and to order

---

[1] Plaintiff's requested order would also extend to ruptured and unruptured inflators in the possession of Takata's Co-Defendants, Honda Motor Co., Ltd.; Honda R&D Co., Ltd.; American Honda Motor Co., Inc.; and Honda of America Mfg., Inc. (collectively "Honda").

motor vehicle and equipment manufacturers to issue recall notifications to owners, purchasers, and dealers. 49 U.S.C. §§ 30118-30119, 30166. The Safety Act also obligates the manufacturer of vehicles or equipment to initiate recall proceedings if the manufacturer learns of a defect and decides in good faith that the defect relates to motor vehicle safety. *Id.* § 30118(c)(1). In addition, under the Safety Act, manufacturers of defective recalled vehicles or equipment must remedy the defect by repair, replacement, or, if a vehicle, refund of the purchase price of the vehicle. *Id.* § 30120(a)(1).

NHTSA's Office of Defects Investigation ("ODI") is charged with conducting investigations "concerning the identification and correction of safety-related defects in motor vehicles and motor vehicle equipment." 49 C.F.R. § 554.5. In conducting such investigations, NHTSA "elicits from every available source and evaluates on a continuing basis any information suggesting the existence of a safety-related defect." *Id.* As set forth in the attached Declaration of Frank Borris, Director of ODI, ODI's primary objective is to ensure that defective vehicles and equipment are recalled and remedied pursuant to the Safety Act. Decl. of Frank Borris ("Borris Decl.") ¶ 2.

The Federal Motor Vehicle Safety Standards, promulgated by NHTSA, require all passenger cars to be equipped with air bags, which protect vehicle occupants in the event of a crash. *See* 49 C.F.R. § 571.208 (FMVSS No. 208, *Occupant crash protection*); Borris Decl. ¶ 3. In the event of a crash, a properly functioning air bag inflator provides the energy necessary for an air bag to inflate. *Id.* A defective inflator, however, may provide too much energy, which, rather than properly inflating the attached air bag, causes the inflator to rupture and project metal fragments into vehicle occupants. *Id.* Defendant Takata manufactures air bag inflators and is a

major supplier of millions of inflators to vehicle manufacturers in the United States. *Id.* ¶ 4.

**A.      NHTSA's Investigation of Air Bag Inflator Ruptures and Associated Testing**

On June 11, 2014, after identifying six incidents of rupturing Takata inflators, NHTSA opened a formal defect investigation to collect information from Takata and manufacturers of vehicles equipped with potentially defective inflators. *Id.* ¶ 5; *see* NHTSA Preliminary Evaluation No. PE14-016.[2] Two days after opening its investigation, NHTSA requested that the ten affected vehicle manufacturers voluntarily conduct recalls to collect Takata inflators from equipped vehicles and replace them with replacement inflators. Borris Decl. ¶¶ 7, 9. The manufacturers complied with NHTSA's request and, although the recalls were initially limited to high-humidity regions, they have since expanded to a nationwide scope. *Id.* ¶ 8.

The total number of vehicles currently subject to NHTSA's investigation is over 10 million, comprising approximately 4% of the total number of vehicles in the United States. *Id.* ¶ 6. All inflators collected pursuant to the recalls are shipped by dealers to a Takata facility in Auburn Hills, Michigan. *Id.* ¶ 9. At present, Takata receives approximately 12,000 to 15,000 recalled inflators per day (60,000-75,000 each week). *Id.* ¶ 10.

Once collected, some of the inflators—approximately 300 per day at present—undergo testing by Takata. Takata, pursuant to an October 30, 2014 Special Order and a November 18, 2014 General Order issued by NHTSA, provides to the agency detailed testing data, results, conclusions, and other information critical to NHTSA's safety investigation. *Id.* ¶¶ 14, 15; *id.* Exs. A, B. The primary testing method Takata currently employs on the inflators is dubbed

---

[2] Information regarding the investigation is available on NHTSA's website, www.safercar.gov. To find this investigation: (1) click "Recalls & investigations"; (2) select "ID Number"; (3) click the box to select "Investigations"; (4) enter "PE14016" in the text box; and (5) click "GO."

"instrumented" testing. This method records over time the internal pressure of the inflator during deployment and enables the detection of abnormalities in the burn rate of the inflator's propellant, even if no rupture occurs. *Id.* ¶ 12. Since this method involves activation of the inflator, and because an inflator cannot be reused once it has been activated, this testing method is destructive testing. *Id.*

The data and information provided by Takata are essential to NHTSA's investigation of the root cause of the inflator defect and to its effort to identify the full scope of affected vehicles in need of a safety remedy. *Id.* ¶ 13. The root cause or causes of inflator ruptures is an important threshold determination from which other critical facts may be determined. *Id.* ¶ 21. ODI uses this testing to analyze the number and characteristics of the inflators that fail and to look for patterns that may explain the root cause, such as a high rate of failure of inflators manufactured at the same time and same location, or of inflators installed in similarly-situated vehicles. *Id.* ¶ 20. Further, the ongoing testing is a necessary component of NHTSA's attempt to identify the full scope of affected vehicles. *Id.* ¶ 19. Data on how the inflators perform when deployed provides necessary information used to address the risk of different inflator types and of different vehicle populations. *Id.* ¶ 21.

The testing currently being conducted by Takata will soon be augmented by additional testing measures. NHTSA learned in December 2014 that the affected vehicle manufacturers formed a coalition through which they intend to perform testing on recalled inflators. *Id.* ¶ 16. NHTSA believes that, for purposes of its forthcoming testing, the coalition will obtain recalled inflators directly from Takata. *Id.* Under NHTSA's November 18, 2014 General Order, *see id.* ¶ 17, Ex. B., the vehicle manufacturers must report to NHTSA the results obtained and conclusions

reached from this forthcoming testing.  In addition to testing by Takata and the manufacturers' coalition, NHTSA, as part of its investigative authority, may perform its own testing on recalled equipment.  Although NHTSA has not yet performed any such testing, in the event that it does elect to do so, it will obtain recalled inflators directly from Takata.  *Id.* ¶ 18.

### B.     Plaintiff's Preservation Motion

On January 9, 2015, Plaintiff filed an Emergency Motion for the Preservation of Evidence.  Plaintiff has asked the Court to order Takata, and its co-Defendant Honda, to preserve, in "unaltered form":

> a.     Any and all ruptured inflators previously removed from accident or defective field vehicles and currently in the possession of the Honda and/or Takata Defendants; and
> b.     Any and all un-ruptured canisters removed under recall proceedings by and/or currently in the possession of the Honda and/or Takata Defendants.

Mot. at 1-2.  In addition, Plaintiff has asked the Court to order Takata and Honda to "deliver any and all defective or suspect ruptured and/or recalled but un-ruptured inflators previously removed from accident, defective, and/or recalled field vehicles within 10 days to some jointly agreed upon and/or Court-designated location in the United States to ensure preservation and competent storage of those items for and up until the date of later analysis and disposition in aid of discovery in this case by all parties to the litigation."  *See id.* at 2.

This Court entered a text order on January 12, 2015, directing Defendants to respond to the motion by January 20, 2015 and instructing them to "preserve the evidence until the court's ruling in this case." ECF No. 27.  Following a telephonic conference held on January 13, 2015, the Court entered a second text order "to address the unintended consequences" of its January 12

order. ECF No. 30. The Court vacated its January 12 order "to the extent that it hinders or prevents ongoing destructive testing and/or investigation of recovered inflators/canisters being conducted to determine the cause(s) of airbag ruptures." *Id.* The Court entered a second text order on January 13, 2015 finding the parties' agreement to "maintain specified ruptured and un-ruptured canisters" at Takata's facility in Michigan while the Court decided Plaintiff's motion to be a "satisfactory resolution" of the issue. ECF No. 31.

## DISCUSSION

Pursuant to 28 U.S.C. § 517, the United States of America files this Statement of Interest to apprise the Court of the United States's substantial interest in uninterrupted, continued testing of Takata inflators in order to protect the integrity of NHTSA's investigation and the overall public safety.[3] As the Fourth Circuit has explained, section 517 authorizes the Department of Justice "to explain to a court the interests of the United States in litigation between private parties." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 291 (4th Cir. 2010).

Entering the preservation order sought by Plaintiff in this private litigation would effectively prohibit any and all further testing efforts on recalled inflators. The current testing regime and the data that it produces is an integral aspect of NHTSA's safety defect investigation. A limitation on that testing would substantially hinder the agency's mission to protect public safety. Placing a sudden stop on the present testing regime would cut off the flow of important data and information that NHTSA is actively evaluating and that the agency urgently needs to identify the cause of the defect and its potential consequences to public safety. In addition, the

---

[3] Section 517 provides: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

order would hinder NHTSA's regulatory flexibility by prohibiting any testing by entities other than Takata—including forthcoming testing by the coalition of affected vehicle manufacturers expected to begin in short order. Entry of the preservation order would constitute an unprecedented interference with an ongoing, critical safety investigation being conducted by NHTSA, and Plaintiff's motion should be denied.

A. **The requested preservation order would disrupt all present testing efforts and would severely undermine NHTSA's investigative efforts to protect public safety.**

As an initial matter, the preservation requirement sought by Plaintiff would apply to—and therefore preclude testing of—all recalled inflators. Plaintiff requests preservation in "unaltered form" of, at a minimum, all inflators removed under recalls proceedings that are "currently in the possession" of Takata. Mot. at 2.[4] This request covers each and every inflator removed under recall because, as set forth in the Borris Declaration, inflators removed from any affected vehicle are being sent to Takata for testing, inspection, and storage and are therefore "in the possession" of Takata. Borris Decl. ¶ 9. The preservation requirement would thus impose an across-the-board prohibition on any testing that alters inflators, without any limitation based on vehicle type, geographic location, inflator age, or other characteristic. Such an order would essentially forbid further testing of Takata inflators, and would cause an immediate and severe disruption of NHTSA's investigation into the root cause of the defect and the potential scope of

---

[4] Plaintiff also asks the Court to require preservation of inflators recovered from "accident or defective field vehicles." Mot. at 2. NHTSA's understanding is that testing efforts are presently being conducted only on recalled inflators. However, to the extent that the testing expands to include inflators from accident vehicles, this preservation requirement would also impede NHTSA's investigative prerogatives.

In addition, although Plaintiff uses the term "canister" rather than "inflator" on page 2 of the motion, NHTSA understands these terms to be interchangeable and not materially different for purposes of the testing protocols and NHTSA's investigation. Borris Decl. ¶ 3.

8

the safety risks posed by that defect.

In addition, the preservation regime Plaintiff seeks is irreconcilable with the current testing methodology, which cannot reasonably be modified while maintaining the integrity of NHTSA's investigation. As explained in NHTSA's declaration, the ongoing testing measures include the destruction of the air bag inflators. Such measures are necessary in order to identify the precise circumstances under which unsafe ruptures can and do occur, as well as the internal pressure of any given inflator when it is deployed. *Id.* ¶ 12. In order to generate and provide meaningful data and information for NHTSA's investigation, any testing must include the ability not only to alter, but also to destroy, a recalled inflator. *Id.* ¶¶ 12, 25. Yet the preservation requirement at issue would expressly eliminate the ability to do just that. Any prohibition on the "alteration" of inflators would effectively preclude further testing and stop the flow of data critical to NHTSA's safety investigation.

### B.   A prohibition on transferring the inflators out of Takata's possession would unreasonably limit the scope of NHTSA's investigation.

The requested preservation order would forbid Takata from transferring recalled inflators to other entities, including vehicle manufacturers or NHTSA. Plaintiff has sought an order that requires Takata (and its co-Defendant Honda) to preserve and store all inflators at one designated location "up until the date of later analysis and disposition in aid of discovery in this case by all parties to the litigation." Mot. at 2. Even setting aside any requirement to preserve inflators in "unaltered form," this inflexible storage requirement alone would constitute a substantial impediment to NHTSA's defect investigation.

As explained above, inflator testing is likely to expand beyond the testing currently conducted by Takata. A coalition of vehicle manufacturers intends to commence, imminently,

its own independent testing efforts, the results of which must be reported to NHTSA. *See* Borris Decl. ¶ 16; *id.* ¶ 17, Ex. B. NHTSA reasonably anticipates that the data and conclusions drawn from this coalition testing will augment the information supplied by Takata and provide important additional support to the agency's investigative efforts. NHTSA itself, moreover, retains authority to conduct safety-related testing on recovered equipment.

By precluding Takata from transferring possession of any inflators either to the manufacturers' coalition or to NHTSA (or to any other entity), the preservation order at issue threatens the ongoing, and any further, expansion of NHTSA's investigation. It would intrude on NHTSA's regulatory authority to "elicit[] from *every* available source and evaluate[] on a continuing basis *any information* suggesting the existence of a safety-related defect." 49 C.F.R. § 554.5 (emphasis added). No coalition testing efforts would be allowed, nor would any testing by the government be permitted. Such measures are not only in NHTSA's interest, but more importantly, are also in the interest of the general public, as an expanded investigation, supported by a robust testing regime, will assist in determining the defect's cause and in limiting unreasonable safety risks posed by the inflators.

**C.     The preservation regime sought by Plaintiff is not compatible with NHTSA's need for flexibility in an issue of nationwide scope.**

The United States further submits that the preservation order requested in Plaintiff's motion is incompatible with an effective safety investigation. Because the root cause of the defect has not yet been identified, NHTSA's investigative reach must be allowed to extend to any inflator recovered under the recalls. Borris Decl. ¶ 22. As set forth above, at present, up to 75,000 inflators are being recovered from the field each week from ten different vehicle manufacturers and from geographic regions across the country. NHTSA cannot identify, let

10

alone anticipate, a particular category of inflators or set of attributes to which it can reasonably limit testing efforts.  *Id.*  It is therefore essential that all recalled inflators remain available for testing under oversight by NHTSA.  Plaintiff's preservation request would place arbitrary limitations on NHTSA's investigative priorities, and create undue roadblocks to certain testing avenues that may later be found desirable.  Although NHTSA is willing to consider an accommodation to identify certain inflators for preservation, *see id.* ¶ 27, a preservation regime that denies NHTSA reasonable access to the full inventory of recalled inflators would create the potential for an incomplete understanding of the root cause of rupturing and would hinder NHTSA's ability to identify all affected vehicles.

Moreover, Plaintiff is not likely to be prejudiced by the continuation of NHTSA's defect investigation in its present form.  NHTSA anticipates that, after its investigation concludes, a large number of inflators will remain intact in the condition when removed from recalled vehicles.  *Id.* ¶ 11.  A subset of these inflators would, at that time, be potentially available to Plaintiff for testing.  In addition, NHTSA expects to make public a substantial amount of information regarding its investigation, including the detailed results of its investigation and information regarding the testing efforts, once the investigation is complete.  *Id.*

Entering the preservation order sought by Plaintiff would undermine "Congress' desire to give the Secretary [of Transportation] and his delegates the broad investigative powers necessary to protect public safety."  *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072, 1079 (D.D.C. 1978).  This Court should recognize and protect the important public safety interests served by the testing of inflators pursuant to NHTSA's investigation, and it should deny Plaintiff's motion.

## CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that the Court deny Plaintiff's Emergency Motion for the Preservation of Evidence.

Dated: January 20, 2015.                    Respectfully submitted,

                                                    JOYCE R. BRANDA
Acting Assistant Attorney General

WILLIAM N. NETTLES
United States Attorney

      /s/ Barbara Bowens
BARBARA BOWENS (Fed. Id. #4004)
Civil Chief
United States Attorney's Office
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3052; Fax (803) 252-2759
Email: barbara.bowens@usdoj.gov

JUDRY L. SUBAR
Assistant Director, Federal Programs Branch

      /s/ Andrew Zee
M. ANDREW ZEE (*pro hac vice* motion pending)
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Tel. (415) 436-6646; Fax (415) 436-6642
Email: m.andrew.zee@usdoj.gov

Of counsel:

KATHRYN B. THOMSON
General Counsel
PAUL M. GEIER
Assistant General Counsel for Litigation

ELIZABETH GROSS
Trial Attorney
United States Department of Transportation

O. KEVIN VINCENT
Chief Counsel
TIMOTHY H. GOODMAN
Assistant Chief Counsel
KERRY E. KOLODZIEJ
Senior Trial Attorney
National Highway Traffic Safety Administration

## **CERTIFICATE OF SERVICE**

       This is to certify that, on January 20, 2015, a copy of the foregoing, with attachments, has been served by electronically filing the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification of the filing to all attorneys of record.

                                              /s/ Barbara Bowens
                                              BARBARA BOWENS