IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISIONS

| | |
|---|---|
| ROBERT E. LYON, JR., Individually and as Personal Representative of the Estate of MARY LYON WOLFE, | Civil Action No. 5:14-cv-04485 |
| Plaintiff, | |
| vs. | |
| TAKATA CORPORATION, TAKATA, INC., TK HOLDINGS INC., HIGHLAND INDUSTRIES, INC., HONDA MOTOR CO., LTD., HONDA R & D CO., LTD., AMERICAN HONDA MOTOR CO., INC., AND HONDA OF AMERICA MFG., INC., | |
| Defendants | |

---------------------------------------------------------

### DEFENDANTS TK HOLDINGS INC.'S AND HIGHLAND INDUSTRIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ALL PROCEEDINGS

Defendants TK Holdings Inc. and Highland Industries, Inc. (individually and collectively, "Takata" or the "Takata Defendants") hereby respectfully submit this Motion to Stay All Proceedings pending a ruling on the Motion for Transfer now before the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407.[1] A stay is appropriate in light of Plaintiff's efforts to obtain a "global" emergency "pre-MDL" preservation order impacting the entire Takata airbag litigation, as well as an impending responsive pleading deadline.[2] Plaintiff's tactic of trying to jump ahead of the MDL process through this Court is directly at odds with the

---

[1] Concurrently with this Motion to Stay ("the Motion"), the Takata Defendants have also filed an Opposition to Plaintiff's Motion to Preserve Evidence (the "Opposition to the Motion to Preserve"). The Plaintiff's Motion to Preserve Evidence is hereinafter referred to as the "Motion to Preserve".

[2] On January 9, 2015, per an agreement between the parties, the Court extended Takata's time to respond to the Complaint to January 27, 2015. *See* Text Order, filed Jan. 9, 2015, Dkt. 24. That extension will lapse, however, before the likely time of MDL transfer expected in February.

goals of fairness and efficiency that MDL coordination is designed to promote.  *See* MANUAL FOR COMPLEX LITIGATION § 22.33 ("Centralization serves judicial economy by avoiding duplication of discovery, preventing inconsistent or repetitive rulings, and conserving the financial resources of the parties, their counsel, and the judiciary.").  A stay of this action serves the interests of judicial economy, avoids hardship and inequity to Takata, and poses no potential prejudice to the Plaintiff.  *See Johnson v. DePuy Orthopaedics, Inc.,* No. 3:12-CV-2274, 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012).[3]  For all these reasons, the Motion should be granted.

## BACKGROUND

In a matter of days, the JPML will hear argument on the motion to transfer almost 70 economic loss class actions and 15 personal injury actions that have been filed against Takata, Honda, and an array of automaker defendants.  The class action cases generally allege that members of various proposed classes have suffered devaluation of their 2001 to 2011 model year vehicles and other financial harms because some of those vehicles are equipped with allegedly defective airbags.  They sue under various commercial liability theories including breach of warranty and consumer fraud.  Significantly, many of the plaintiff class members allege that their airbags have been or will be replaced pursuant to corrective recalls by the vehicle manufacturers.  *See In re Takata Airbag Products Liab. Litig.*, MDL No. 2599, Dkt. 1, filed Nov. 3, 2014 (J.P.M.L.) (attached hereto as Exhibit B) (recognizing that NHTSA has "strongly urged all owners or lessees of the recalled vehicles 'to act immediately' on the recall notices to replace Takata airbags").  They commonly note that over 14 million vehicles with Takata's airbags already have been recalled or subject to a corrective field action.  *See, e.g., Horton et al v Takata Corp., et al.*, No. 2:14-cv-4433, Dkt. 1, filed Nov. 14, 2014 (D.S.C. 2014) (Compl. ¶ 26).

---

[3] All cited unpublished opinions are attached hereto as Exhibit A.

The personal injury cases generally allege some kind of airbag-related harm occurring during an accident, and are based primarily on tort theories including negligence and strict liability. *See, e.g., Sujata* Compl. ¶¶ 162-197.  According to Plaintiff's Complaint, however, the airbag did not rupture in his case; rather, it allegedly deployed in either a delayed fashion or with "excessive force" while maintaining its structural integrity. *See Lyon* Compl. ¶ 14-15.  Lyon did not file a complaint until November 21, 2014, and did not serve the Takata Defendants until December 5, 2014.

The economic loss class action complaints are the subject of a November 3, 2014 Motion to Transfer filed with the JPML, as well as numerous interested party responses supporting the creation of an MDL. *See In re Takata Airbag Products Liab. Litig.*, MDL No. 2599, Dkt. 1, filed Nov. 3, 2014 (J.P.M.L.); MDL No. 2599, Dkt. 26, 38, 47.  All parties agree that an MDL is essential to "avoid duplicative judicial effort" and allow for consistent and coordinated pre-trial management. *See* MANUAL FOR COMPLEX LITIGATION § 22.344 (4th ed. 2004).   The only question is where they should be venued.  Oral argument is set for January 29, 2015 and it is reasonably anticipated that the Panel will order transfer in February.

It is also now clear that the related personal injury cases are likely to be transferred to the MDL.  On December 22, 2014, 18 days before the pending Motion, the plaintiffs in the only personal injury class action filed a Notice of Related Action before the JPML, tagging their case as appropriate for transfer to the eventual MDL court. *See In re Takata Airbag Products Liab. Litig.*, MDL No. 2599, Dkt. 223, filed Dec. 22, 2014 (J.P.M.L.) (attached hereto as Exhibit C). Other personal injury plaintiffs had acted earlier, including Lyon, and identified their claims as related and potential tag-along actions. *See In re Takata Airbag Products Liab. Litig.*, MDL No. 2599, Dkt. 122, filed Nov. 26, 2014 (J.P.M.L.) (attached hereto as Exhibit D).  On December 3,

2014, the Plaintiff, along with the class-action plaintiffs in the *Horton*, *Neto*, and *Burch* actions, filed a joint Interested Party Response asking the JPML to consolidate both the economic loss and the personal injury cases as related actions. Lyon argued that the MDL should be venued in the Middle District of Florida before the Honorable James Lawrence King. *See In re Takata Airbag Products Liab. Litig.*, MDL No. 2599, Dkt. 177, filed Dec. 3, 2014 (J.P.M.L.) ("*Lyon* Interested Party Response") (attached hereto as Exhibit E).[4] Sujata similarly tagged her case as a related action before the JPML. *See n re Takata Airbag Products Liab. Litig.*, MDL No. 2599, Dkt. 277, filed Jan. 13, 2015 (J.P.M.L.) (attached hereto as Exhibit F).

Prior to the flood of civil litigation, NHTSA had opened an investigation into Takata inflator issues. As part of its investigation, NHTSA has "pushed" the Takata Defendants and the affected automakers with regard to a comprehensive testing program of Takata inflators and has overseen the program since it got underway. As explained by Deputy Secretary Friedman: "Part of what we did is, we pushed the auto industry . . . to work with Takata, test air bags that are returned, so that we can figure out is this a broader problem . . . As we tried to gather that test data, we were also monitoring field incidents." *See Takata Airbags Ruptures and Recalls*: Hearing Before the H. S. Comm. On Commerce Mfg. & Trade, 113th Cong. 1 (2014) (testimony of NHTSA Deputy Administrator David Friedman) ("Friedman Testimony") (attached hereto as Exhibit G). NHTSA has provided important oversight of the testing program including reviewing the proposed testing protocol, instructing Takata on the number of inflators tested, and reviewing testing data. A critical component of this testing program involves retrieving and

---

[4] As noted in the Takata Defendants' Opposition to the Motion to Preserve, Opp. to Mot. at 4, counsel for Plaintiff in *Lyon* also represent three separate groups of economic loss class action plaintiffs with cases currently pending in this district (also assigned to this Court), the Southern District of Florida and the Eastern District of Louisiana. *See Horton et al v Takata Corp., et al.*, No. 2:14-cv-4433, filed on Nov. 14, 2014 (D.S.C. 2014); *Neto v. Takata Corp., et al.*, No. 1:14-cv-24446, filed on Nov. 21, 2014 (S.D. Fla.); and *Burch v. Takata Corp. et al.*, No. 2:14-cv-2703, filed on Nov. 25, 2014 (E.D. La.). Takata has not yet been served in any of these economic loss class actions.

testing airbag inflators that have not deployed – that is, have not been involved in any accident and are unruptured – in order to gauge the source and scope of the safety risk.

The importance of the NHTSA program was highlighted on January 13, 2015 when NHTSA, hearing of the emergency pre-MDL preservation motion filed by Plaintiff, specifically reached out to the Takata Defendants to inquire regarding the status of the requested relief. Notwithstanding both the class action cases and the very public nature of the NHTSA testing program, no other plaintiff or plaintiffs' group anywhere in the country has previously asked any federal judge to intervene, pending MDL transfer, to preserve all inflators.  Nor have any other plaintiffs claimed that any federal district court should enjoin or otherwise interfere with NHTSA's ongoing testing program.[5]

Several months ago, in October 2014, one other group of plaintiffs in a class action case pending in the Southern District of Florida before Judge King (Plaintiff's preferred MDL court) did file an emergency motion asking for "pre-MDL" discovery – including specifically discovery of documents produced to NHTSA. Ruling from the bench, Judge King not only denied the motion for pre-MDL relief but also stayed the case absent subsequent showing of need. *See Dunn,* Order Denying Pls.' Mot. to Expedite Disc. [DE 5] Without Prejudice, filed December 16, 2014, Dkt. 101 (S.D. Fla.) (attached hereto as Exhibit H); *see also Dunn*, Dec. 8, 2014 Hearing Transcript 35:20-23; 36:19-20 (inviting the plaintiffs to return if "there should be some untoward delay that we can't see at this point") (attached hereto as Exhibit I). Notwithstanding Judge King's invitation to do so if circumstances changed, no plaintiff has returned to Judge King seeking further relief.  On the contrary, the overwhelming majority of

---

[5] After the filing of the pending Motion a copycat preservation request was presented by counsel in a personal injury case pending in Florida.  That motion has not been filed.

claimants with served cases have agreed to voluntarily stay their proceedings pending MDL transfer.[6]

*Lyon*, with *Sujata*, now stands alone out of all of the cases tagged for MDL consolidation, in seeking to have a Court rule on a matter affecting the universe of Takata airbag litigation pre-MDL assignment. As noted in the Defendants' Opposition to the Motion to Preserve, there is no emergency. *See* Opp. Br. at 3. Neither Sujata nor Lyon raised any issue regarding the status of their airbags from their accidents, which occurred 3 years ago and 7 years ago, respectively, at any time prior to filing the Motion to Preserve. As this Court has recognized, the Takata Defendants have voluntarily undertaken to preserve ruptured inflators retrieved from accidents.[7] The Takata Defendants will extend that undertaking to preserve unruptured inflators collected through recalls until an MDL court addresses any actual preservation issue in a comprehensive and a coordinated fashion.

The Takata Defendants ask this Court to do as others have and enter a stay of all proceedings pending MDL transfer, including all attempts by Plaintiffs to obtain a "pre-MDL" preservation order and all responsive pleading deadlines. Continuing with these actions not only lacks a legitimate or productive purpose, but in fact undermines the goals of MDL coordination that Plaintiff himself espouses. *See Lyon* Interested Party Response at 4 ("Consolidation will

---

[6] The Takata Defendants obtained consent to stay in 48 cases and obtained a stay after motion practice in *Dunn*. In the majority of the remaining cases, the Takata Defendants have not yet been served.

[7] On January 13, 2015, following a teleconference with the parties, the Court vacated its January 12, 2015 order to the extent it would have hindered or prevented "ongoing destructive testing and/or investigation of recovered inflators/canisters being conducted to determine the cause(s) of airbag ruptures." Minute Order, Dkt. 30, filed Jan. 13, 2015. Specifically, the Court acknowledged that the order as written would prevent NHTSA from continuing its investigations, that it "did not intend for this effect," and that it was therefore immediately lifting the "stay." By separate order on the same day, the Court reported Takata Defendants' voluntary maintenance of ruptured and unruptured canisters during the adjudication and stated that this action provided a satisfactory resolution of the Plaintiff's request for a court depository. Pl.'s Mot. for Preservation Order at 2.

-6-

conserve judicial resources, avoid inconsistent rulings, promote convenience for the parties and witnesses, and minimize duplication of motion practice and discovery.").

## ARGUMENT

Plaintiff's motion practice before the Court completely disserves the MDL process that all parties – including Plaintiff – have agreed should take place. Courts within this district have frequently recognized that they should "grant stays in cases when an MDL decision is pending." *Brandt v. BP, PLC*, No. 2:10-cv-1460, 2010 WL 2802495, at *2 (D.S.C. July 14, 2010). When deciding a motion to stay, the district court considers three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Impulse Monitoring Inc. v. Aetna Health, Inc.*, No. 3:14-cv-2041, 2014 WL 4748598, at *1 (D.S.C. Sept. 23, 2014) (citing *Johnson v. DePuy Orthopaedics Inc.*, No. 3:12-cv-2274, 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012).

### A.     A Stay Is In the Interest of Judicial Economy

A stay pending MDL transfer avoids wasting judicial resources on issues which, within a matter of weeks, will be solely within the jurisdiction of the MDL court. It also avoids burdening the MDL court with a significant ruling that impacts all parties to the MDL proceedings, but is not necessarily the decision that the MDL court may desire. *See Good v. Altria Grp., Inc.*, 624 F. Supp. 2d 132, 135-36 (D. Me. 2009) (holding that a ruling pre-MDL transfer would "preempt the transferee court's discretion as . . . [as it] might make a decision that the transferee court would not have made. . . ."). In fact, courts in this district have held that, absent extraordinary circumstances, such as clear evidence of wrongdoing, efforts to obtain "emergency" pre-trial rulings pre-MDL transfer "mock[] an efficient and orderly judicial

system." *Litchfield v. BP, PLC*, No. 2:10-cv-1462, 2010 WL 2802498, at *2 (D.S.C. July 14, 2010) (Duffy, J.).

All parties to the Takata airbag litigation agree that the anticipated transfer of cases to an MDL before significant rulings are made in individual actions will facilitate a coordinated and comprehensive case management plan. *See* MANUAL FOR COMPLEX LITIGATION § 22.344 (4th ed. 2004) (recognizing that MDL decisions should be made early to "avoid duplicative judicial efforts" and "afford[] the Panel flexibility in choosing the best forum for the common questions of fact"). In advocating for MDL transfer, the *Lyon* plaintiff argued that "[c]onsolidation will reserve judicial resources, avoid inconsistent rulings, promote convenience for the parties and witnesses, and minimize duplication of motion practice and discovery." *See Lyon* Interested Party Response at 4. Plaintiff stressed the importance and benefit of having "one court to oversee and manage [the pre-trial] process and procedure and the coordination of discovery." *Id.* (citing 28 U.S.C. § 1407). Among other critical tasks, the transferee MDL court will be charged with determining what claims are viable and what the appropriate scope of discovery should be in light of the existing claims.

Given the unanimous support for MDL coordination, which Plaintiff clearly supports, he should not now be allowed to move for a "global" preservation order purportedly on behalf of "all interested parties" but before creation of the MDL. The same judicial economy arguments that make an MDL the right decision also argue against any one court jumping ahead of the process while transfer is imminent. *See Impulse Monitoring*, 2014 WL 4748598, at *1 ("Staying the case pending a possible transfer by the Panel will avoid wasting judicial resources [and] the duplication of case management tasks [. . .]").

### B. A Stay Is Needed to Avoid Hardship to Defendants, NHTSA And Public Safety

"Staying the case pending a possible transfer by the Panel will avoid . . . undue hardship for [a defendant] who is having to engage in widespread pretrial proceedings while [a] request for a transfer is pending." *Impulse Monitoring*, 2014 WL 4748598, at *1. In fact, the risk of hardship to a defendant forced to engage in duplicative motion practice and discovery proceedings may well outweigh any prejudice that could potentially inure to the plaintiff. *North v. Merck & Co., Inc.*, No. 05-CV-6475, 2005 WL 2921638, at *2 (W.D.N.Y. Nov. 4, 2005). Here, granting Plaintiff's requested relief would impose a great hardship on the Takata Defendants both at this juncture *and* in the forthcoming MDL.

Absent a stay, the Takata Defendants will be forced to litigate issues in advance of MDL coordination – potentially multiple times and before multiple courts. As stated above, prior to the filing of the pending Motion to Preserve, no plaintiff had raised an issue regarding retention of inflators. Within days of the motion, however, a copycat request was threatened by a plaintiff with a personal injury case in a different jurisdiction. It is reasonable to expect that others may follow with comparable efforts, as plaintiffs' counsel jockey for positions of prominence before the future MDL court. Each of these demands requires a response from the Takata Defendants, wasting time and money and diverting attention from genuine issues of true importance to public safety. Indeed, the pending Motion to Preserve before this Court has already resulted in numerous discussions between counsel, telephonic conferences with the Court and substantial formal written submissions.

Moreover, the result of such duplicative efforts is apt to be inconsistent and possibly irreconcilable rulings. There is nothing to say that Plaintiff's definition of an appropriate preservation order will align with what some other group or court may demand. *See* Jan. 13,

2015 Hearing Tr. at 8:22-25 ("The problem I have with a carte blanche testing program [is] where there's nothing in writing [and] no orders anywhere having them preserve the testing and the data."). Nor can it be predicted how any order entered on an emergency basis and without the due consideration an MDL court may be able to give would or would not differ with regard to critical issues such as the authority of NHTSA. As discussed in more detail in Takata's response to Plaintiff's Motion to Preserve, any challenge to how unruptured airbags are being recalled and tested for potential defects implicates the primary jurisdiction of NHTSA. *See* 49 U.S.C. § 30118 (empowering NHTSA to oversee "***testing, inspecting, investigation, or research***" of motor vehicle equipment) (emphasis added). The scope of NHTSA's authority and primary jurisdiction is an issue that the MDL court is best suited to address, so that it may receive the benefit of comprehensive briefing by all affected parties. There is no reason for this Court to preempt the MDL court's consideration or judgment.

Last, it should be remembered that there remain automaker defendants who are not parties to the personal injury cases in play here but are parties to actions that will become part of the future MDL. *See, e.g.,* BMW Notice of Appearance, MDL No. 2599, Dkt. 77; Ford Notice of Appearance, MDL No. 2599, Dkt. 61. Plainly, any preservation order issued here – even if nominally against only the Takata and Honda Defendants – will potentially prejudice the rights of parties to the global litigation.

### C.     A Stay Will Not Prejudice Plaintiff

As explained in more detail in Takata's Opposition to the Motion to Preserve, this case presents no urgent need for any pre-trial preservation order. *See* Opp. to Mot. at 10-12. *Lyon* arises from an accident almost 7 years ago. Between the time that Lyon filed his suit on November 14, 2014 and his "emergency" motion for a preservation order, Plaintiff did nothing to

advance his case. Tellingly, Plaintiff does not even allege a rupture, but rather that his airbag deployed in either a delayed fashion or with "excessive force" while maintaining its structural integrity. *See Lyon* Compl. ¶ 14-15. Plaintiff's counsel has also represented to Defendants that the inflator was effectively destroyed. Therefore, there is no preservation issue here at all.

Nor is there a genuine emergency – or indeed, any issue at all – that would compel Plaintiff to seek a "global" preservation order on behalf of all MDL plaintiffs not before this Court. *See* Opp. to Mot. at 9-11. Takata is voluntarily taking and continues to take reasonable measures to preserve the inflators at issue, although certain non-deployed and unruptured inflators are being tested in cooperation with NHTSA as part of its ongoing root cause analysis.[8] *See* Jan. 14, 2015 Tr. at 11:18-12:25 (Bernick). This Court already has determined that Takata's efforts are sufficient to make unnecessary the immediate creation of a global inflator depository, as Plaintiffs sought. Moreover, in withdrawing part of its January 12, 2015 order and lifting the initial "stay" of testing, this Court has appropriately recognized that interests of public safety would not be well-served by interfering with or otherwise burdening the ongoing testing to determine a root cause of the ruptures at issue. Minute Order, Dkt. 30, filed Jan. 13, 2015. As to unruptured canisters that are *not* being used for testing, the Takata Defendants are presently preserving them – and intend to continue to preserve them – so that any actual preservation issue raised can be addressed by the MDL court.

Indeed, Plaintiff cannot possibly claim to be prejudiced by this testing program, such that he may need emergency judicial intervention. NHTSA's efforts regarding testing began in

---

[8] TK Holdings and its parent have issued hold notices for documents and physical things and have undertaken to preserve evidence relevant to expanded litigation. This includes inflators involved in accidents. Accident ruptured inflators are being preserved at TK Holdings' headquarters in Michigan, and, as reported to the Court during the January 13 teleconference, such accident ruptured inflators (from U.S. vehicles) in Japan are being sent to TK Holdings as well. As the Takata Defendants make clear in their Opposition to the Motion to Preserve, Opp. to Mot. at 11, Plaintiff has no basis to speculate about the imminent destruction of these inflators in any Takata facility.

September 2014, and have been the subject of Congressional testimony and widespread media coverage. Yet neither the Plaintiffs here nor any other group of litigants anywhere in the country has previously raised any concerns. Moreover, it is clear the efforts overseen by NHTSA are designed to understand the root cause of any airbag ruptures, further the investigative efforts of all interested parties into the source and scope of the problem, and help protect public safety.

Finally, to the extent Plaintiff may argue that he should obtain global relief now because it may take some time before the MDL is prepared to address preservation or other discovery issues, his arguments still do not justify preemptive intervention. *See* Jan. 13, 2015 Hearing Tr. at 26:3-7 ("[T]he reality is everybody in these proceeding knows it takes some time for the process to occur . . . My prediction is 60 days, it could even be 90 days."). Courts in this district squarely reject the notion that the inevitable delay between consolidation, transfer, and initiation of proceedings by the MDL court poses any prejudice to a plaintiff. *See Impulse Monitoring*, 2014 WL 4748598, at *1 (where a motion to transfer has been fully briefed and argument set, "any purported delay . . . claimed by plaintiff will be minimal and would not constitute prejudice to Plaintiff"). Indeed, courts have held that even "a delay of a few months . . . is, nonetheless, slight when compared to the hardship to the defendants and the interests of judicial economy." *Brandt v. BP, PLC*, No. 2:10-cv-1460, 2010 WL 2802495, at *1-2 (D.S.C. July 14, 2010) (collecting cases holding that plaintiffs not prejudiced by delay). Accordingly, this Court should grant Defendants' Motion and stay the case so that the MDL court can act upon a clean slate with input from all interested parties.

## **CONCLUSION**

Plaintiff here, like all interested parties, wants an MDL so that "important threshold issues [are] considered by a single court [to] prevent inconsistent results and 'promote just and efficient conduct of such actions.'" *Lyon* Interested Party Response at 4. With MDL transfer likely only a few weeks away, Plaintiff should not be allowed to circumvent the process and obtain preemptive global pre-MDL relief here. Rather, his case should be stayed.

Dated: January 21, 2015

                                        Respectfully submitted,

| DECHERT LLP | HOOD LAW FIRM |
|---|---|
| David Bernick (to be admitted pro hac vice)<br>1095 Avenue of the Americas<br>New York, New York 10036 | / s/ James Hood<br>James B. Hood, Esq. (SC # 70212)<br>172 Meeting Street<br>Post Office Box 1508 |
| Hope S. Freiwald  (to be admitted *pro hac vice*)<br>Benjamin Barnett (to be admitted *pro hac vice*)<br>2929 Arch St.<br>Philadelphia, PA 19104 | Charleston, SC  29402<br>Phone: (843) 577-4435<br>Facsimile: (843) 722-1630<br>Email: info@hoodlaw.com;<br>Jamie Hood (james.hood@hoodlaw.com) |
| HARTLINE DACUS BARGER DREYER LLP | Attorneys for the Defendant<br>TK Holdings inc. |
| Kyle H. Dreyer (to be admitted pro hac vice)<br>Giovanna T. Bingham (to be admitted pro hac vice)<br>8750 North Central Expressway, Suite 1600<br>Dallas, TX 75231 | |

**CERTIFICATE OF SERVICE**

      I, James Hood, hereby certify that on this 21st day of January 2015, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Stay Proceedings to be served by operation of the Court's CM/ECF electronic filing system, which will send a notice of electronic filing to all counsel of record, as well as by email, as agreed between the parties.

      /s/ James Hood

James B. Hood, Esq. (SC # 70212)
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630
Email: info@hoodlaw.com;
Jamie Hood (james.hood@hoodlaw.com)

Attorneys for the Defendant
TK Holdings inc.